OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1902.

---

(*Continued from Volume 172.*)

## DULANEY et al., Appellants, v. BUFFUM et al.

Division Two, March 17, 1903.

1. **Appeal:** RELEASE: FILED IN SUPREME COURT. If subsequent to the appeal a release by way of settlement has been executed by appellants which would operate as a bar to a further prosecution of the suit, the respondent may file it in the appellate court and have the appeal dismissed.

2. **Release of Some:** RELEASE OF ALL JOINT TORTFEASORS. A receipt or release given to two defendant tortfeasors, acknowledging the receipt of a certain sum named, reciting that the same is "in full settlement and satisfaction of all claims and demands in our favor, or in favor of either of us, on account of the matters and things set up or referred to in the petition in the above entitled cause, so far as said two defendants are concerned," and signed by the plaintiffs, must be held to be a full satisfaction for all injury set out in the petition, and as operating as a complete bar to a further claim against any other of the joint tortfeasors, whether they were mentioned therein or not.

3. **Torts:** SATISFACTION. Satisfaction from one tortfeasor, whether received before or after recovery, extinguishes the right as against the others.

　　　　　　　　　　　　　　(1)

4. ——: ——: JOINT AND SEVERAL. Whether a tort is, in contemplation of law, joint or several, if there can be but one satisfaction, the acceptance of a full satisfaction from some of the tortfeasors bars any further claim against the others.

5. ——: ——: RESERVATION. Where plaintiffs acknowledge full satisfaction for the injury done them, they can not reserve a joint action or any further claim against those tortfeasors jointly liable who are not named in the release.

6. ——: ——: EFFECT OF STATUTE. The common law governing the liability of joint tortfeasors is in force in this State. It was not repealed by section 897, Revised Statutes 1899, giving debtors the right to compound their debts and to compel those not released to contribute their share, since plaintiffs in an action charging defendants with an injury to their business are in no sense creditors, nor are the defendants debtors.

7. ——: ——: AFFIDAVIT. The affidavit of one of the makers of a release stating what he understood the receipt, which acknowledged full satisfaction for injury to the makers, to mean, can not in any wise change the legal effect of that receipt.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis*, Judge.

APPEAL DISMISSED.

*Burks & Sterrett, Harvey & Gower*, and *W. M. Williams* for appellants.

(1)   The error complained of is the action of the trial court in sustaining a demurrer to plaintiffs' evidence. The court, in passing upon the question whether plaintiffs have a case for the jury, must give the most favorable interpretation to the facts that can reasonably be put upon them, and draw every fair inference in favor of the plaintiffs that the evidence warrants. Young v. Webb City, 150 Mo. 333; Bender v. Railroad, 137 Mo. 240; Bank v. Simpson, 152 Mo. 638. (2) While plaintiff's lumberyard was located at Slater, they had also worked up a trade at other points along the line of the Chicago & Alton railroad and had an established business and customers at such other points. They had,

in fact, contracted to furnish lumber to consumers at some of said places. The association, of which the defendants were officers and members, was formed to prevent such business as plaintiffs desired to carry on and were carrying on. Defendants conspired together to break up and destroy plaintiffs' business at other points than Slater, and to prevent them from dealing in lumber at places where they did not have a lumberyard located. Defendants agreed among themselves that no one should deal in lumber at a place where the defendants' association had a member, unless such dealer kept at said place a stock amounting to as much as five carloads of lumber. Wholesalers were not permitted to sell to the plaintiffs under a penalty of expulsion from the association, if members thereof, and a fine of twenty-five dollars per car for each car sold to plaintiffs; and other wholesalers were threatened with a boycott of their business in the event of their refusal to abide by the rules of the association prohibiting sales to plaintiffs. Defendants, through their said association, directly interfered with and prevented sales to plaintiffs, not only by their own members, but by outsiders. This was done for the purpose of preventing competition with members of defendants' association, and to destroy plaintiffs' business at other points than that at which their yard was located. The evidence showed a direct damage to plaintiffs in consequence of the conspiracy formed to break up their business and to prevent wholesalers from selling lumber to them to be handled at other places than their yard at Slater. The evidence entitled plaintiffs to go to the jury, and the court erred in giving a peremptory instruction to the contrary. The case comes directly within the rule laid down in Jackson v. Stanfield, 23 L. R. A. 588; Olive v. Van Patton, 25 S. W. 428; Doremus v. Hennessy, 176 Ill. 608; Graham v. Railroad, 47 La. Ann. 214; Delz v. Winfree, 16 S. W. 111; Moore v. Bennet, 15 L. R. A. 361; Hawarden v. Coal Co., 87 N. W. 472. (3) The fact that at one time

plaintiffs were members of this association constitutes no defense, and will not prevent a recovery by them. Ertz v. Produce Exchange Co., 84 N. W. 743.

*Elijah Robinson, Stuart Carkener* and *Rector & Lyons* for respondents.

(1)    A conspiracy is defined as a combination of two or more persons by some concerted action to accomplish some unlawful purpose, or to accomplish some purpose not unlawful, by unlawful means.    State v. Davis, 80 Mo. App. 239; Commonwealth v. Hunt, 4 Met. (Mass.) 111; Cooley on Torts, p. 279.    (2)    That the things shown by the evidence in this case to have been done by defendants, if done by them individually, were not unlawful, is indisputable under all the authorities. A person may deal or refuse to deal with any other person or class of persons, for no reason or any reason, whether good, bad or indifferent.    Cooley on Torts, pp. 278 and 688; Payne v. Railroad, 13 Lea 507, 49 Am. Rep. 666; Snow v. Wheeler, 113 Mass. 139; Walker v. Cronin, 107 Mass. 179; Morris v. Tuthill, 72 N. Y. 575; Haywood v. Tillson, 75 Me. 225, 46 Am. Rep. 373; Mogul Steamship Co. v. McGregor, 23 Q. B. Div. 598, App. Cases 25. (3)    An act lawful when done by one person, does not become unlawful because done by the concerted action of a number of persons. It could only become so by reason of unlawful means used for its accomplishment, which would likewise be true of an act done by an individual.    Hunt v. Simonds, 19 Mo. 583; Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 40 Am. S. Rep. 323.    (4) If an act is not unlawful, then a threat to do such act is not a threat in law—cannot be legal intimidation.    So the same is true of an alleged conspiracy.    If the acts done or threatened are not unlawful, then the agreement is not a conspiracy in law.    Payne v. Railroad, 49 Am. Rep. 674; Alexander v. Relfe, 9 Mo. App. 144; Kimball v. Harmon, 34 Md. 407, 6 Am. Rep. 340.    (5)    It is not

unlawful for persons engaged in the same business, to unite for the protection and benefit of their common interests, in an agreement not to deal with any one who is engaged in the same business and who carries on or conducts his business in such a way as has a tendency to injure or destroy the business of those so united, as well as being prejudicial to the interests of the public. Neither is it unlawful for them, in the furtherance of their object, to advance and protect their own business interests, to agree not only not to deal with such party, but likewise to use their influence to prevent others from so doing.   The fact that loss of business or other damage results, would not in such case make such action, either of the individual or of the association, done solely for the protection of their own business interests, unlawful or a ground for action. Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 40 Am. St. R. 319; Cote v. Murphy, 159 Pa. 420, 23 L. R. A. 135; Bowen v. Matheson, 14 Allen (Mass.) 499; Maculey v. Tierney, 19 R. I. 255, 61 Am. St. R. 770; Brewster v. Miller, 41 S. W. 301, 38 L. R. A. 505; Anderson v. United States, 171 U. S. 604; Glencoe Land Co. v. Hudson Com. Co., 138 Mo. 439; Hunt v. Simonds, 19 Mo. 583; Mogul Steamship Co. v. McGregor, 23 Q. B. Div. 598, App. Cases 25; Allen v. Flood (House of Lords), Appeal Cases 1898, p. 1.   (6) The agreement of the members of the association not to deal with wholesalers who should sell to consumers, and sending notices to wholesalers to that effect, and the publication, in the official paper of the association, of the names of the wholesalers who made a practice of selling to consumers does not amount to such coercion or intimidation as to make such acts unlawful.   The wholesalers are left to their choice just as are the members of the association; the latter to act as their interests dictate, and the former being at perfect liberty to do the same for themselves.   Cote v. Murphy, 23 L. R. A. 135, 159 Pa. 420; Macauley v. Tierney, 19 R. I. 255.

FOX, J.—This was a suit begun by the appellants in Saline county, on December 31, 1897. There was a trial of this cause at the February term, 1899, of the circuit court of Saline county. At the close of the evidence on the part of the plaintiff, the court instructed the jury to find the issues for the defendant; in accordance with such direction by the court, the jury rendered a verdict for the defendant, and judgment was rendered in pursuance of the verdict. The motion for new trial having been overruled, plaintiffs in due time and form prosecute their appeal to this court.

At the April term, 1902, of this court, defendants Frank W. Buffum and La Crosse Lumber Company filed their motion to dismiss, as to them, to which motion was attached a receipt for $750, in settlement with these two defendants of all claims against them, on account of the charges alleged in the petition; also a letter from the plaintiffs to one of the defendants, stating that they had directed the discontinuance or dismissal of this case, against these two defendants, which motion and release thereto attached is as follows:

"Now come F. W. Buffum and the LaCrosse Lumber Company, two of the above named defendants and move the court to dismiss as to them in said cause and for reasons therefor state that plaintiffs and the said defendants F. W. Buffum and the LaCrosse Lumber Company have fully settled the matter of differences between them, complained of in said cause, as fully shown by the receipt and letters hereto attached, and said plaintiffs, as shown by this said letter, agree to dismiss said cause in this court as to them.

"William J. Dulaney and S. J. Dulaney composing the firm of Dulaney Brothers, plaintiffs, against Frank W. Buffum, La Crosse Lumber Company, H. C. Taylor, R. J. Hurley, George D. Hope, A. A. White and Harry Gorsuch, defendants.

"Received from Frank W. Buffum and La Crosse Lumber Company, two of the defendants in the above-

entitled cause, which was instituted in the circuit court of Saline county, Missouri, and is now pending in the Supreme Court of said State, the sum of seven hundred and fifty dollars, the same being in full settlement and satisfaction of all claims and demands in our favor, or in favor of either of us, on account of the matters and things set up or referred to in the petition in the above entitled suit, so far as said two defendants are concerned; and we hereby agree to at once discontinue and dismiss said suit so far as said two defendants are concerned.    In witness whereof we have hereunto set our hands this 14th day of December, 1901, at Slater, Saline county, Missouri.

"W. P. DULANEY,

"S. J. DULANEY,

"DULANEY BROS.,

"By S. J. DULANEY."

The motion as above quoted was sustained and on the same day, at the April term, 1902, the other defendants in this cause filed their motion to dismiss the appeal herein pending, which motion is as follows:

"Now come H. C. Taylor, R. J. Hurley, George D. Hope, A. A. White and H. A. Gorsuch, a part of the defendants in the above-entitled cause, and show to the court that this is an action for damages for alleged torts on the part of the above-named defendants and other defendants, Frank W. Buffum and La Crosse Lumber Company, charged to have been committed by them jointly; that since the date of the granting of the appeal in this case the said plaintiffs and defendants F. W. Buffum and La Crosse Lumber Company have compromised, adjusted and settled all matters in controversy in this case, and that the said plaintiffs have received from said Buffum and La Crosse Lumber Company, in full payment and satisfaction of all the matters complained of in their petition in this case, the sum of $750, and in consideration thereof they executed and delivered to said Buffum and said La Crosse Lumber Company

a receipt in full payment, satisfaction and discharge of all liability resulting from any and all things set forth in their petition in this case. Said receipt is attached to another motion filed in this cause. Wherefore, the above-named defendants move the court to dismiss the appeal herein.''

It will be observed that the contention urged by the defendants not included in the receipt or release is, that the settlement by plaintiffs with the La Crosse Lumber Company and F. W. Buffum, as indicated by the receipt filed, operated, in law, a release to all of the defendants. There can be no dispute that this is an action sounding in tort; it is an action for injury to plaintiffs' business by reason, so the petition alleges, of the malicious, wrongful and unlawful conduct of the defendants. The defendants are charged to have committed the wrongs (which resulted in the injury to appellants' business) jointly.

That we may fully appreciate the nature of this action and as the vital question involved in this motion depends wholly upon its nature, we here quote the petition, omitting the caption:

''Now at this day come the plaintiffs, and for their cause of action herein against the defendants, state that at all of the times hereinafter complained of they were and still are co-partners, trading and doing business under the firm name and style of Dulaney Brothers. That their residence and place of business is in the city of Slater, in the county of Saline and State of Missouri, aforesaid. That the defendant, the La Crosse Lumber Company, during the same time was and still is a corporation duly organized and created under the laws of the State of Missouri and that the said corporation has and usually keeps an office and agent in the county of Saline and State of Missouri for the transaction of business. Plaintiffs state that they have been engaged in the business and trade of retail dealers in lumber and manufactured products of lumber, to-wit, doors, sashes,

blinds and such other articles as usually form a part of the stock in trade of retail lumber dealers, and that on the first day of January, 1893, they had a cash capital employed in their said business of eight thousand dollars and that in the conduct of their said business they had succeeded, at that time, in building up and establishing a large and lucrative trade which had been and was then a source of large profits to the plaintiffs in their said business and employment. That as such retail lumber dealers they were engaged in selling lumber at the said town of Slater, and at other towns along the Chicago & Alton railroad, to-wit, the towns of Marshall, Blackburn, Shackelford, Norton, Gilliam, Glasgow, Mexico, Bowling Green, Vandalia, Laddonia and other towns along the said Chicago & Alton railroad which were of easy access to them in the management and conduct of their said business; also at other points in Saline county, and in Montgomery county, Missouri, and that their said business had extended throughout the territory named. That in the prosecution of their said business the plaintiffs had established good credit with the wholesale lumber dealers throughout the country and were in good repute as retail lumber dealers with good financial credit as such. That the defendant, the LaCrosse Lumber Company, at the same time was engaged in the lumber business as retail dealers, and that the other defendants above named were at the same time, and still are, engaged in the lumber business as retail dealers at different points in the State of Missouri and Kansas. That on or about the first day of January, 1894, the defendants maliciously, wrongfully and unlawfully entered into a conspiracy for the purpose and malicious intent of injuring the plaintiffs in their said business in which they were then and still are engaged, and with the malicious intent to obstruct, hinder and prevent plaintiffs from carrying on their said business; and that in order to further carry out the said malicious intent and design of the said defendants they, with divers and sundry

persons and corporations, formed themselves into a federation or association under the name and style of the Missouri and Kansas Association of Lumber Dealers, and that all of the above-named defendants, together with the Gurdon Lumber Company, a corporation, the Badger Lumber Company, a corporation, the Southern Lumber Company, a corporation, the Clarkson Lumber Company, a corporation, the Eagle Lumber Company, a corporation, with a view of hindering and preventing the plaintiffs from carrying on their said business, did combine and confederate together to publish, and did publish, to all wholesale lumber dealers that the plaintiffs' firm was not engaged in a legitimate business as retail lumber dealers, and as not being in sympathy with the said association known as the Missouri and Kansas Association of Lumber Dealers and ordered and directed that the said wholesale lumber dealers, who are members of the said association, should not make shipments to plaintiffs' firm and that plaintiffs were denominated by said publication as 'poachers' which said denomination is understood and intended by the defendants to mean that the said persons so denominated were not engaged in the business of retail lumber dealing, but that they should be treated by the members of the said association and by the wholesale lumber dealers as such poachers, and that the said wholesale lumber dealers and members of the said association were required, under the penalty of expulsion from membership in the said association, to refuse to sell lumber to the plaintiffs' firm in any quantity and under the further penalty of a fine to be inflicted by the members of the said association upon the offender in the sum of twenty-five dollars for each and every car, or less than a car, which might be shipped to the plaintiffs' firm. That the said publication was in writing and published in a newspaper issued by the defendants under the name of The Official Bulletin, published and circulated by them from their office at Kansas City, Missouri, and circulated among all

of the wholesale and retail lumber dealers in the States of Missouri and Kansas, and that said publication was made for the purpose of injuring the plaintiffs in their business and preventing them from engaging therein, and was published from time to time in the years 1896 to 1897, and is continued in every current number of said paper. Plaintiffs further say that the defendants have further associated themselves together in a combination for the purpose of preventing the plaintiffs' firm from engaging in competition with them as retail lumber dealers at the points and places above named, and have associated themselves together for the purpose of controlling the business of the retail lumber trade at said points and preventing the plaintiffs' firm from engaging therein at said points.

"Plaintiffs state that by reason of the acts of defendants as aforesaid, and the said publication so made by the defendants, as aforesaid, they have been prevented from engaging in the retail lumber business at the said points outside of said Slater as they had been accustomed to do before said publication was so made by the defendants, as aforesaid, and that by reason thereof the plaintiffs' firm lost large profits arising from the conduct of their said business at said places, outside of said Slater, to-wit, the sum of five thousand dollars.

"Plaintiffs say that by reason of the acts of defendants as aforesaid, all of the above-named wholesale dealers, so alleged to be members of the said association, have continuously and repeatedly refused to ship lumber to the plaintiffs' firm as retail dealers of lumber to any of the points above named in which they were legally engaged in the business as retail dealers, and that plaintiffs have been unable to fill and perform contracts made and entered into by them with their customers for supplying them with lumber, whereby the plaintiffs lost the profits belonging to said contracts and that all of said contracts for supplying their customers

with lumber would have made a profit, to-wit, the sum of five thousand dollars.

"Plaintiffs state that by reason of the said conduct of the defendants, they were put to great expense in procuring lumber from other points with which to fill their contracts as aforesaid and were compelled to resort to local rates for shipments of lumber whereby they were compelled to make a great outlay of money for said expense, to-wit, the sum of one thousand dollars.

"Plaintiffs state that before the malicious interference with their business by the defendants in the manner and form as aforesaid, they were enabled to conduct the same at a profit, but that by reason of the said unlawful combination of the defendants to prevent the plaintiffs from carrying on their said business and making a profit thereby, they have continued to lose money by the operation of their said business and have been compelled to buy at higher prices than they would otherwise have had to pay for their stock in trade and have been compelled to sell at a greater disadvantage and at large expense so that the plaintiffs instead of conducting a profitable business have lost money annually in said business from the first day of January, 1894, up to the present time, to-wit, the sum of twenty thousand dollars.

"Plaintiffs say that the said association so formed by the defendants as aforesaid and known and described as The Missouri and Kansas Association of Lumber Dealers, has for its principal object and purpose the design to prevent competition among retail lumber dealers and to maintain exorbitant prices for the commodities which they manufacture and sell and for the purpose of preventing other persons, not members of the said association, from engaging in the business of the retail lumber dealing and for the purpose of oppressing and maliciously harassing all such persons as may be engaged in the retail lumber business, and particularly the plaintiffs' firm, in the territory in which the plain-

tiffs' firm is engaged and has been engaged in said business as aforesaid. In furtherance of said purpose and design on the part of the defendants and to compel the plaintiffs' firm to retire from the said business, plaintiffs state that the defendants have willfully and maliciously published the plaintiffs' firm to all of the wholesale and retail dealers of lumber in the State of Missouri by their said publication in said paper, published by them and called The Official Bulletin, as 'poachers' and not entitled to credit as retail lumber dealers and have threatened to visit fines and penalties upon such wholesale dealers as should sell to the plaintiffs and have threatened to withdraw their patronage and support from said wholesale lumber dealers if they should sell to the plaintiffs any lumber to be used by them in their stock in trade, thereby preventing the plaintiffs from procuring lumber with which to replenish and maintain their said stock, and preventing the plaintiffs from making profits usually incident to their said business and which they had made before the said malicious interference and hindrance with their business by the defendants as aforesaid.

"The plaintiffs say that by reason of the premises they have suffered actual damage in the sum of twenty thousand dollars, and by reason of the malicious interference with their business and their malicious acts as above set forth, they have suffered damages in the further sum of twenty thousand dollars. Wherefore they pray for a judgment against defendants for $20,000 actual damages and for the further sum of $20,000 for punitive damages as aforesaid and for costs and for all proper relief."

In the case of Haggerty v. Morrison, 59 Mo. 324, and Marx v. Hart, 166 Mo. 517, this court held it was proper practice, in case of discharge in bankruptcy, after an appeal to this court, to file such discharge in this court, to the end that the bankrupt might avail himself of the effect of such discharge in the proceeding

pending in the appellate court. We see no difference in principle in the practice adopted in those cases from the case before us. If subsequent to the appeal, a release has been executed, which would operate as a bar to the further prosecution of this case, we see no reason why the respondents can not avail themselves of such release by filing it in this court. We assume further from the suggestions of the appellants as well as the respondents, upon the motion to dismiss the appeal, that they desire this question passed on, for there is no intimation in the suggestions as to the propriety of this court doing so.

The receipt, in the nature of a release of two of the defendants, is on file and is now before us. If, under the law, it operates as a bar to a recovery against the other defendants, then this motion should be sustained and this cause ended.

The receipt, or release, recites that "the sum of $750, the same being in full settlement and satisfaction of all claims and demands in our favor, or in favor of either of us, on account of the matters and things set up or referred to in the petition in the above-entitled suit." This, under the rules of the common law, was a full satisfaction of the injury and would operate a complete bar as to all the joint tortfeasors.

In the case of Gunther v. Lee, 45 Md. 60, all the cases are cited and discussed and the learned judge announced the conclusion reached. He says: "All the cases, both English and American, maintain the doctrine that satisfaction from one joint tortfeasor, whether received before or after recovery, extinguishes the right as against the others. The plaintiff is not entitled to receive more than one satisfaction for and in respect of the same injury."

While it is true that a wrong of the nature alleged in the petition is joint, yet in contemplation of law, it is several, and the action may be maintained against any person participating in the infliction of the wrongs and

separate judgments may be rendered; but after all, there can be but one satisfaction.

Judge COOLEY, in discussing this question, says: "It is to be observed in respect to the point above considered, where the bar accrues in favor of some of the wrongdoers by reason of what has been received from or done in respect to one or more others, that the bar arises not from any particular form that the proceeding assumes, but from the fact that the injured party has actually received satisfaction, or what in law is deemed the equivalent. Therefore, if he accepts the satisfaction voluntarily made by one, that is a bar as to all." [Cooley on Torts (2 Ed.), p. 160.]

In the case of Lovejoy v. Murray, 3 Wall. (U. S.) l. c. 17, it was announced very clearly that "when the plaintiff has accepted satisfaction in full for the injury done him from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages." In the release or receipt filed, "full settlement and satisfaction of all claims and demands on account of the matters and things set up in the petition," are acknowledged. It is true, following this acknowledgment, it is said, "So far as said two defendants are concerned." This can not change the application of the rule.

When the plaintiffs acknowledge full satisfaction of all the injuries complained of in the petition, any effort to reserve a cause of action against those jointly liable, will not prevent the operation of the bar as to those not included in the release.

In the case of Ruble v. Turner, 2 H. & M. (Va.) 38, this question is directly passed on. In that case, there was a receipt or release similar in form to the one in the case at bar. In that receipt, Thos. W. Ruble said, after reciting payment, that it "shall be satisfaction for the part he, the said Motley, took in an assault and battery committed upon me at said Mount;" then added this proviso, "provided this shall not be considered as

any satisfaction in favor of Joseph Nunn, Stephen Maynor, James Turner or Archibald McNanny, who were guilty of the same at the same time and place." The learned judge said in that case: "It is a rule of construction that, if there be any clause or condition in a deed, which is either contrary to law, or repugnant to the nature of the estate created, it is void. Now here the question is, whether, by the first clause in this instrument of writing, Joel Motley was thereby discharged, and the plaintiff barred of his action against him; and I hold that he was, for the reasons already given. What, then, is the effect of this? The law says, that if one joint trespasser be released, or make accord and satisfaction, it shall bar a recovery against all the others. The plaintiff can no more change the law, in this particular, by any subsequent proviso or condition, than he could, after a grant in fee simple, by deed, restrain his grantee from selling the lands, or change the course of descents prescribed by law; neither of which will it be contended that he could do. The proviso, then, is merely void, and can not prevent the legal effect of the accord and satisfaction made by one of the defendants."

The receipt or release in the Ruble case was much stronger and more favorable to the plaintiffs than the receipt on file in the case before us for determination, and the clear and logical announcement of the rule in that case, is decisive of the question before us, provided the common law is in force, in respect to the subject under discussion. In the case of Bronson v. Fitzhugh, 1 Hill (N. Y.) 185, it is said "to be that the release, being taken most strongly against the releasor, is conclusive evidence that he has been satisfied for the wrong; and after satisfaction, *although it moved* from only one of the tortfeasors, no foundation remains for an action against any one. A sufficient atonement having been made for the trespass, the whole matter is at an end. It is as though the wrong had never been done."

This court in the case of Page v. Freeman, 19 Mo. 421, per Judge Scott said: "In case of a joint trespass, the plaintiff may sue two or more of them jointly, or may sue them separately, and may recover a judgment against them. *But for one trespass or wrong he can have but one satisfaction.*" He further adds that if he recovers separate judgments, he must elect which one he will proceed to enforce.

To the same effect is Long v. Long, 57 Iowa 497; Turner v. Hitchcock, 20 Iowa 310; Tompkins v. Railroad, 66 Cal. 163; see also, 20 Am. and Eng. Ency. of Law (1 Ed.), pp. 764, 765, and notes, in which all the cases are collated.

If in this case, plaintiffs had elected to sue the defendants separately and had recovered separate judgments and acknowledged satisfaction as to one of the judgments, it would have operated a complete bar to the enforcement of the other. The same principle is applicable, whether the satisfaction is received before the judgment or subsequent.

This leads us to the only remaining question upon this motion. The only suggestions made by appellants upon this motion is a reference to section 897, Revised Statutes 1899, which provides:

"It shall be lawful for every creditor of two or more debtors, joint or several, to compound with any and every one or more of his debtors for such sum as he may see fit, and to release him or them from all further liability to him for such indebtedness, without impairing his right to demand and collect the balance of such indebtedness from the other debtor or debtors thereof, and not so released; provided, that no such release shall impair the right of any debtor of such indebtedness, not so released, to have contribution from his co-debtors, as is by law now secured to him."

It is clear that the action in this case against the defendants, charging them with a wrong and injury to

their business, do not fall within the provisions of this section. The plaintiffs in this case are in no sense, under the allegations in the petition, to be denominated creditors of defendants; nor are the defendants, under any sort of interpretation of this section, to be construed as debtors. The section referred to and quoted, has application to creditors and debtors in the common acceptation of those terms, and are not to be applied to an action where the parties are charged with a tort and as joint tortfeasors.

The affidavits of one of the plaintiffs as to the understanding in accepting this $750 does not relieve the difficulty. If a written reservation of the cause of action as to the other defendants would not serve this purpose, as was announced in the case of Ruble v. Turner, supra, we are unable to see how a verbal understanding could do so.

This receipt, in the nature of a release for $750 in full settlement and satisfaction of all claims and demands by reason of the causes complained of in the petition, must be held as one satisfaction for the injury to their business alleged in the petition. They are entitled to but one satisfaction and such a fact must be held as a complete bar to any recovery against the other defendants.

Our attention has not been called to any statute altering or changing the rules of the common law, in actions of this character, hence, we are of the opinion that as to actions predicated upon the facts as alleged in this petition, the common law is applicable and this appeal will be dismissed. All concur.