Thomas AHERRON, et al., Appellants,

v.

ST. JOHN'S MERCY MEDICAL CENTER, Defendant-Appellant,

Robert Taylor, M.D., Respondent.

No. 67563.

Supreme Court of Missouri,
En Banc.

July 15, 1986.

Jerome F. Raskas, Mark D. Sadow, St. Louis, Gary Paul, Bernard C. Brinker, Clayton, for appellants.

Joseph M. Kortenhof, Joseph H. Raybuck, St. Louis, for respondent.

ROBERTSON, Judge.

Consolidated appeals of Thomas and Jacqueline Aherron, plaintiffs in a medical malpractice action, and St. John's Mercy Medical Center, one of two defendants, sued by the Aherrons. Plaintiffs appeal from summary judgment entered against them on their claim against the second defendant, Robert Taylor, M.D. Defendant Hospital appeals from the trial court's judgment dismissing part of its cross-claim against Taylor. Following an opinion by the Eastern District in which both judgments were reversed, this Court granted transfer. Treating this case as on original appeal, art. V, § 10, Mo. Const., we also reverse the trial court's judgments and remand the cause for reinstatement of the terminated claims.

## I.

The pertinent facts are not disputed. Plaintiffs filed an amended petition against Taylor and the Hospital, claiming medical negligence on the part of Taylor and vicarious liability for Taylor's negligence on the part of the Hospital, as Taylor's employer. The Hospital filed a two-count cross-claim against Taylor. In the first count, the Hospital sought indemnity against Taylor for any judgment rendered against it based on derivative liability for Taylor's negligence. In its second count, the Hospital sought non-contractual indemnity based on an apportionment of relative fault, should both parties be found primarily negligent.

Taylor moved to dismiss the Hospital's cross-claim on the ground that, since it was a cause of action based on an act of medical neglect, and since it was filed later than two years after the act of neglect complained of, it was barred by the medical malpractice statute of limitations, § 516.105, RSMo 1978. The trial court sustained the motion as to Count I, but overruled the motion as to Count II, "insofar as it requests an apportionment of liability based upon the relative fault of the defendants."

Subsequently, plaintiffs entered into a settlement agreement with the Hospital, whereby the Hospital agreed to pay a structured settlement and to dismiss its cross-claim against Taylor without prejudice, in return for plaintiffs' promise to release the Hospital from further liability. The agreement recited that it did not constitute a release of Taylor. Plaintiffs also executed a document styled Partial Release, releasing the Hospital from all claims arising out of the underlying accident, but expressly reserving their claims against Taylor. On March 5, 1984, the Hospital filed a document in the Circuit Court stating that it "dismiss[ed] its cross-claim against defendant Taylor without prejudice."

Taylor moved for summary judgment against plaintiffs on the ground that the release of an employer from vicarious liability for the acts of an employee also serves to release the employee, irrespective of any reservation of rights accompanying that release. The trial court entered summary judgment in Taylor's favor on that motion.

## II.

Turning first to the Hospital's appeal, the trial court erred in dismissing the Hospital's claim for indemnity as untimely filed under § 516.105. In *Rowland v. Skaggs Companies, Inc.*, 666 S.W.2d 770 (Mo. banc 1984), this Court held that a claim under *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), for apportionment of fault need not be subject to the statute of limitations applicable to medical malpractice actions, § 516.105, RSMo 1978, because of the independent nature of that claim from the underlying claim of the plaintiff for damages. In that respect, the *Whitehead & Kales* claim was effectively treated as a claim for indemnity, although one which arises prior to the payment of a judgment. These same principles apply to the claim asserted here, which is unequivocally

couched in terms of indemnity, although of a non-contractual nature. The hospital's claim for indemnity is at least as independent of the underlying claim for damages as that considered in *Rowland,* and is likewise not subject to the period of limitations stated in § 516.105.

Taylor asserts, however, that the Hospital may not appeal from the involuntary dismissal of its indemnity claim, because, having filed a subsequent, undifferentiated dismissal of its cross-claim, it is no longer a "party" to the suit.

Section 512.020, RSMo 1978, provides in pertinent part that "[a]ny party to a suit aggrieved by any judgment of any trial court ... may take his appeal ... from any final judgment in the case...." The statute does not require that the aggrieved party be a "party" in the sense that he either has or is subject to a pending claim, notwithstanding the effects of the judgment of which he complains.

█ Were defendant Taylor's argument correct, it would effectively remove the right of appeal from any claimant whose claim has been dismissed, whether voluntarily or involuntarily. Generally, a party may not appeal from a *voluntary* dismissal of his action; however, this is not because he is no longer a "party," but because he is not aggrieved. Here, defendant Hospital is aggrieved by the trial court's judgment involuntarily dismissing its cross-claim for indemnity.[1]

Even if defendant Hospital is a party, defendant Taylor argues that the Hospital is not genuinely aggrieved by the involuntary dismissal of its cross-claim for indemnity. On March 2, 1984, the Hospital filed a dismissal in the trial court as follows: "Defendant St. John's Mercy Medical Center dismisses its cross-claim against defendant Taylor without prejudice." Taylor

argues that the undifferentiated language of the document constitutes a voluntary dismissal of both counts of the Hospital's cross-claim against Taylor, that the Hospital is not an aggrieved party and, therefore, the Hospital has no standing to appeal. We disagree.

Although the language of the dismissal document is not to be recommended under these circumstances, the fact remains that Count I of the Hospital's cross-claim was dismissed by the trial court on December 2, 1983. When the Hospital filed its dismissal, its cross-claim consisted of only Count II, Count I having been dismissed by the trial court. It is logically inconsistent to dismiss voluntarily that which has already been involuntarily dismissed. We do not believe that the Hospital's voluntary dismissal filed March 2, 1984, can be read as a voluntary dismissal of Count I, under these circumstances. The Hospital is an aggrieved party authorized to appeal in this matter.

*Rowland, supra,* therefore, requires reversal of the trial court's dismissal of Count I of the Hospital's cross-claim against Taylor.

### III.

█ On their appeal, the Aherrons charge that the trial court erred in granting Taylor summary judgment based on their release of the Hospital. The Aherrons urge that the express terms of the release reserved their claim against Taylor, and that such a release of an employer, against whom only vicarious liability is asserted, does not effectively release an employee. We agree.

*Max v. Spaeth,* 349 S.W.2d 1, 3 (Mo. 1961), includes dicta that "release of the master releases the servant." We need not

---

1. It should be noted, however, that while the Hospital was "aggrieved" by the "judgment" dismissing its cross-claim for indemnity, it is not authorized by § 512.020 to appeal from *this* judgment, but only from the "final judgment" of the trial court, which disposes of all parties and all issues. The final judgment occurred, following the Hospital's dismissal of its cross-claim against Taylor, when the trial court entered summary judgment against plaintiffs. *See Rabon v. Michigan Mutual Insurance Company,* 654 S.W.2d 648 (Mo.App.1983) (dismissal of third-party petition was final judgment, in light of previous voluntary dismissal of underlying petition).

determine whether that dicta correctly states the law in Missouri in cases involving vicarious liability.[2]

The pertinent rule is provided by § 537.-060, RSMo Cum.Supp.1984. Under that section,

> Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

*Id.* The second and third sentences of this section, added by Laws 1983, p. 914, are substantially the same as § 4 of the Uniform Contribution Among Tortfeasors Act (1955 Revision), 12 U.L.A. 57 (1975) (hereafter UCATA).

An employee and a vicariously liable employer are "persons liable in tort for the same injury or wrongful death," and therefore subject to the statutory provisions controlling partial settlement and release. In *Clark v. Brooks,* 377 A.2d 365 (Del.Super. 1977), aff'd *sub nom Blackshear v. Clark,* 391 A.2d 747 (Del.1978), the court interpreted a Delaware statute drawn from an earlier version of the UCATA. Under the earlier language, similar provisions regarding the effect of partial settlement and release were applied to agreements with "persons jointly or severally liable in tort for the same injury." Del. Code Annot. tit. 10, §§ 6301, 6304 (1974). That court held that these provisions were pertinent to settlement agreements involving employees and their vicariously liable employers. *Accord, Holve v. Draper,* 95 Idaho 193, 505 P.2d 1265 (1973). While the *Clark* court resisted the conclusion, it is apparent that the revised language of the UCATA, incorporated in § 537.060, is more clearly applicable to the vicarious liability context than the earlier language.

A different conclusion is not made necessary by the reference in § 537.060 to the non-discharge of "other tortfeasors," since a vicariously liable employer as well as its employee are tortfeasors. *Clark,* 377 A.2d at 370–71. Furthermore, it is of no consequence for present purposes that this section provides for the non-liability of a releasee for contribution or non-contractual indemnity, since this does not alter the clear effect of the statute in precluding an unintended release of a non-settling defendant.

---

**2.** There has been considerable confusion over whether and to what extent an agreement by an injured person not to assert vicarious liability against the employer of the person who caused that injury operates to extinguish the liability of the employee. Annot., 92 A.L.R.2d 533, 536 (1963). This confusion generally has resulted from two factors. The first of these factors is the difficulty in determining whether the rules applicable to joint tortfeasors should apply in the master-servant context; that employers are allowed to recover the whole of the amount paid on account of a servant's tort alters the conceptual foundation somewhat. *See generally* Annot., *supra,* at § 4[b]; *Hamm v. Thompson,* 143 Colo. 298, 353 P.2d 73 (1960). The second of these factors is the formalistic view that, if the rules applicable to joint tortfeasors are followed, a "release" (under seal) given to one obligor extinguishes all liability on the underlying claim, while a "covenant not to sue" extinguishes no liability, even of the party to whom it is given. *See McDonald v. Goddard Grocery Company,* 184 Mo.App. 432, 171 S.W. 650, 652 (1914); *see also* Restatement (Second) of Torts, § 885, Comments (a), (b) (1979).

There remains the question, however, whether this statute applies to the present case, having become effective after the injury complained of but before the release agreement was entered into. It is generally said that a statute is presumed to operate prospectively-only, unless a contrary intent of the legislature appears. *Lincoln Credit Company v. Peach*, 636 S.W.2d 31 (Mo. banc 1982), appeal dism'd, 459 U.S. 1094 (1983). However, this presumption only applies to those statutes which affect *substantive* rights as opposed to "remedial," or nonsubstantive rights. *Clark v. Kansas City, St. Louis & Chicago Railroad Company*, 219 Mo. 524, 118 S.W. 40, 43 (1909). It is to be observed, furthermore, that Article I, § 13 of the Missouri Constitution prohibits retrospective laws, but that in order to be retrospective within the meaning of this constitutional proscription, the law must "take away [existing vested civil rights], or it must create a new obligation, impose a new duty, or attach a new disability in respect to gone-by transactions ..." *Id.; see also State ex rel. St. Louis-San Francisco Railway Company v. Buder*, 515 S.W.2d 409, 410 (Mo. banc 1974). For all practical purposes, then, the only pertinent question with respect to retrospective operation is whether an effect facially contemplated by a statute is prohibited by Article I, § 13; if not, then the effect properly flows from the statute. Since the statute in question facially contemplates its application to releases executed following enactment, and since such an effect does not alter substantive rights, the statute is properly applicable in the present circumstances.

Assuming that, prior to the enactment, the release of a vicariously liable employer would have effected a release of the guilty employee as well, no preexisting substantive rights or liabilities of that employee were altered by the statute's enactment. Such an employee was nevertheless subject to liability for the full amount of the underlying claim, whether to the claimant or, if the employer satisfied that claim, to the employer. The employee would have had no reasonable expectation of, much less an enforceable substantive right to, exoneration from partial liability as a result of the plaintiff releasing the employer in return for less than the full amount of the claim. *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150, 155 (1960); *Holve, supra*, 505 P.2d at 1266–67.

By analogy, those provisions of the UCATA which effect a rule of contribution among joint tortfeasors have been held not to affect substantive rights. The reasoning on this point is that, at the time of such an enactment, each such tortfeasor would have been liable for the entire amount of the judgment, and any extinguishment of that liability resulting from satisfaction of a joint judgment by another joint tortfeasor would have been merely "a matter of chance rather than the result of a right which became fixed as of the time of the accident." *Augustus v. Bean*, 56 Cal.2d 270, 14 Cal.Rptr. 641, 363 P.2d 873, 875 (banc 1961); *Accord Village of El Portal v. City of Miami Shores*, 362 So.2d 275 (Fla. 1978). While this reasoning may not take into account the substantive aspects of the individual tortfeasor's right to limit his ultimate responsibility to pay the judgment by passing some of that cost to other tortfeasors, this aspect is not involved in the circumstances present here, where the question concerns solely the ability of the non-paying tortfeasor to escape liability.

In reaching the contrary conclusion, the Tennessee Supreme Court relied upon the premise that, prior to the adoption of a similar provision, if a plaintiff executed a covenant not to sue, for consideration, to one of several wrongdoers, the remaining defendants could not reduce their liability by the amount of the consideration paid. *Miller v. Sohns*, 225 Tenn. 158, 464 S.W.2d 824, 826 (1971). However, the Tennessee rule of "no offset" is the minority rule, the majority of jurisdictions (including Missouri) holding that even settlement by a covenant not to sue will extinguish the liability of co-obligors on the tort claim, to the extent of the consideration paid. *Annot.*, 50 A.L.R. 1050, 1085–86 (1927); Ruling Case Law, Perm.Supp., *Release*, § 36, n. 1

and § 37, n. 7(a), pp. 5337, 38 (1929); *accord, Arnett v. Missouri Pacific Railway Co.*, 64 Mo.App. 368, 374–75 (1896). This rule was in place even prior to the previous version of § 537.060.[3] Without the pre-existing substantive environment noted in *Miller*, the adoption of the current § 537.-060 cannot have had the substantive effect noted in that case.

That part of the trial court's judgment dismissing the Hospital's cross-claim for indemnity, and that part of its judgment granting summary judgment against plaintiffs on their claim against defendant Taylor, are reversed. The cause is remanded to the trial court for reinstatement of appellants' claims.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY and RENDLEN, JJ., concur.

WELLIVER, J., dissents.

---

**3.** That section reads:

Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. It shall be lawful for all persons having a claim or cause of action against two or more joint tort-feasors or wrongdoers to compound, settle with, and discharge any and every one or more of said joint tort-feasors or wrongdoers for such sum as such person or persons may see fit, and to release him or them from all further liability to such person or persons for such tort or wrong, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the other joint tort-feasors or wrongdoers against whom such person or persons has such claim or cause of action, and not so released.

§ 537.060, RSMo 1978. The second sentence of that section was added by Laws 1915, pp. 268–69.