**April MANAR, Appellant,**

v.

**PARK LANE MEDICAL
CENTER, Respondent.**

**No. WD 39736.**

Missouri Court of Appeals,
Western District.

June 14, 1988.

Steven L. Hobson and Ronald R. Holliger, Stites, Holliger and Knepper, P.A., Kansas City, for appellant.

William L. Turner and Jeffrey I. Chasen, Gage and Tucker, Kansas City, for respondent.

Before GAITAN, P.J., and
TURNAGE and CLARK, JJ.

CLARK, Judge.

April Manar brought suit against respondent Park Lane Medical Center, a hospital, and against five individuals, Patrick T. Little, Ronald W. Hubbard, Lawrence E. Dorman and Guy A. Francis, all osteopathic physicians, and E. Hazen, a certified registered nurse anesthetist. The cause of action was medical malpractice based on claims that the defendants were negligent in the care and treatment of Manar in the course of performing a thyroidectomy. Manar reached a settlement of her claims against all the individuals after suit was commenced. She gave a release, but reserved her claims against the hospital.

Park Lane moved for summary judgment on two grounds, first, that if plaintiff's cause of action against the hospital was based on its vicarious liability for the acts of its agents and employees, the release of

the latter operated to release the hospital also as principal and employer. Second, that if plaintiff asserted a theory of "corporate negligence," that is a claim of liability on the part of the hospital for acts or omissions by staff physicians not directly employed by Park Lane, such a cause of action is not recognized in Missouri, or, if it is, Manar's claim is barred by the statute of limitations. The trial court granted Park Lane's motion but did not specify which of the grounds asserted in the motion was relied on as the basis for the decision. Manar appeals contending that summary judgment was improperly granted. We agree and therefore reverse.

The facts of the case applicable to the summary judgment issues are not actually in contest. They are recounted here, however, granting to plaintiff the broadest and most favorable intendment. *Lowrey v. Horvath*, 689 S.W.2d 625, 626 (Mo. banc 1985). So stated, they are as follow.

Manar was suffering from a condition known as hyperthyroidism. She was under the care of Dr. Dorman. After more conservative treatment did not relieve the problem, Dr. Dorman suggested that a thyroidectomy be performed. He introduced Manar to Dr. Hubbard, a surgeon, who in turn called in his associate, Dr. Little.[1] All of the physicians held staff privileges at Park Lane which entitled them to admit patients to the hospital and to use hospital facilities for various medical services, including surgery. In accordance with the recommendation made for her treatment, Manar entered Park Lane May 18, 1981, and surgery was performed on her May 20, 1981.

The attending surgeon when the operation was performed was Dr. Little. He was assisted by Dr. Hubbard and Dr. Dorman. Although the scheduled procedure was to have been a subtotal or partial thyroidectomy, a complete excision of the gland was accomplished. In the process, the surgeon damaged Manar's laryngeal nerves causing permanent paralysis of her vocal cords. Following surgery, Manar ex-perienced difficulty in breathing and an emergency tracheostomy was performed. A plastic hollow tube was inserted which Manar requires in order to breathe. That condition is permanent.

Park Lane Medical Center is a hospital accredited by the American Osteopathic Association. It is governed by a board of directors and operates under corporate and professional by-laws. The professional by-laws establish standards for patient care and are implemented by the hospital administrator and by the staff physicians. The latter have the initial responsibility to review applications by doctors seeking staff privileges, to monitor the performance of practitioners and to recommend restriction or suspension of privileges, all subject to approval by the hospital board. The medical staff at Park Lane consists of a chief of staff and clinical department chairmen who serve with approval by the board.

At the relevant times, Dr. Hubbard was chairman of the department of surgery at Park Lane. Upon the recommendation of Dr. Hubbard, Dr. Little was appointed to the Park Lane medical staff, thereby entitling him to use of the hospital facilities. Certain restrictions were imposed by Dr. Hubbard upon Dr. Little's entitlement to perform surgery without supervision, a circumstance attributable to Dr. Little's lack of experience. In the case of a thyroidectomy, a procedure requiring a surgeon of advanced skill, Dr. Little was entitled to operate only when supervised. The surgery was actually performed on Manar by Dr. Little under Dr. Hubbard's supervision with the authority in Dr. Hubbard to intervene if needed.

Plaintiff contended in her first amended petition that the surgery performed upon her was below the standard of care of an average physician in that Dr. Little was not skilled, experienced or qualified in the procedure and Dr. Hubbard failed in his duty to supervise his less experienced associate. As to Park Lane, plaintiff asserted the hospital was liable for the acts of the doctors because it extended staff privileges to

---

1. Defendant Francis was alleged to have provided pre-operative and post-operative care. The details of his participation are not relevant to the issues on appeal.

Dr. Little allowing him to render treatment for which he was not qualified and failed through the negligence of Dr. Hubbard to insure a minimum standard of professional care to patients who relied on the hospital's representation that it had facilities and personnel trained and expert in the rendition of medical services.

As was noted above, Park Lane moved for summary judgment and the trial court granted the motion without stating the grounds. Normally, in this circumstance, it is to be presumed that the order was made based on the grounds specified in the motion. *Lipton Realty, Inc. v. St. Louis Housing Authority*, 705 S.W.2d 565, 568 (Mo.App.1986). Here, however, the issue is complicated by the fact that Park Lane asserted inconsistent and factually dissimilar bases for summary judgment in alternative form in its motion. We therefore address the contentions separately.

## I.

■ Park Lane's first ground for summary judgment relied on the settlement with and release of the physicians as effecting a concurrent release of the hospital. The contention, generally stated, was: (a) the cause of action against Park Lane relied on its derivative responsibility for the negligent acts and omissions of Drs. Hubbard and Little as agents of Park Lane; (b) the only persons alleged to have been negligent in caring for the plaintiff have been released by settlement; (c) as a matter of law, in the case of a claim based on the doctrine of respondeat superior, a release of the agent releases the principal. This contention is arguable only if it be assumed that the physicians were agents, servants or employees of the hospital, a proposition which Park Lane otherwise denies vigorously in the alternative contentions. If, however, Park Lane is to claim the benefit of the release, it can only do so by accepting the agency status of Drs. Hubbard and Little. Review of the point therefore indulges the assumption that Park Lane was vicariously liable for the acts or omissions of doctors admitted to staff privileges and for similar conduct by clinical department chairmen responsible to supervise the qual-

ity of patient care provided by staff members.

Appellant contends that summary judgment was not properly entered based on the release of the named individuals, even if the asserted ground for liability was that of Park Lane as employer or principal of those actively negligent, because the entitlement of a claimant to make a partial settlement is protected by statute. She says § 537.060, RSMo 1986, operates to preclude the unintended release of a non-settling defendant and prevents Park Lane from relying on the release given the other defendants as a ground for summary judgment.

Under the common law, the release of one tort-feasor released others claimed to be responsible for the same injury. *Dulaney v. Buffum*, 173 Mo. 1, 73 S.W. 125 (1903). The present statute, § 537.060, RSMo 1986, and its predecessor, § 537.060, RSMo 1978, were intended to overcome the common law rule and to permit a claimant to settle with and to release one or more of several joint tort-feasors without impairing the right to collect the balance of the claim from the other joint tort-feasors. The distinction between the 1978 and 1986 versions of the statute is that under the former, claims against non-settling joint tort-feasors were not preserved unless such claims were expressly reserved or the settlement was for less than full satisfaction of the claim. *New Amsterdam Casualty Co. v. O'Brien*, 330 S.W.2d 859, 864 (Mo. 1960); *Liberty v. J.A. Tobin Construction Co.*, 512 S.W.2d 886, 890 (Mo.App.1974). Under the 1986 statute, settling claimants are relieved from the obligation of expressly reserving claims against non-settling defendants. A release given under the 1986 law and silent as to surviving claims against other tort-feasors does not discharge those claims.

In the present case, if Park Lane and the named individuals are deemed to have been joint tort-feasors, the claim against Park Lane was not released, first because it was expressly reserved in compliance with § 537.060, RSMo 1978, and second because

§ 537.060, RSMo 1986, directs that a release of other tort-feasors must be specifically recited, otherwise the unreleased claims survive.

The question remains, however, as to whether § 537.060 is applicable to a case of vicarious liability of the master for the acts of his servant or agent. In *McGinnis v. Chicago, R.I. & P. Railway*, 200 Mo. 347, 98 S.W. 590 (1906), the court announced the rule that where the cause of action against the employer is based on the doctrine of respondeat superior and the wrongful act of the employee, exoneration of the employee operates to exonerate the employer. Most recently, the viability of this principle was reaffirmed in *Burnett v. Griffith*, 739 S.W.2d 712, 714 (Mo. banc 1987).

We assume the trial court relied on the "McGinnis Doctrine" and concluded, because the liability of Park Lane lay only in the negligent acts and omissions of its agents, Drs. Hubbard, Little, Dorman, Francis and nurse anesthetist Hazen, the release of the medical practitioners necessarily discharged any liability of Park Lane as a matter of law. As we apply the controlling case law, the Missouri Supreme Court has ruled to the contrary.

In *Aherron v. St. John's Mercy Medical Center*, 713 S.W.2d 498 (Mo. banc 1986), the plaintiffs asserted claims against Dr. Robert Taylor for medical negligence and against the hospital on the theory of vicarious liability for Taylor's acts. A settlement was reached between plaintiffs and the hospital and a release was given which expressly reserved the claims against Taylor. The latter moved for summary judgment contending that under the general law, the release of an employer from vicarious liability for the acts of an employee also releases the employee irrespective of the terms contained in the release given the employer. The trial court agreed and entered summary judgment in favor of the employee. On appeal the supreme court reversed and ordered plaintiffs' claim against Dr. Taylor reinstated and also ordered that the cross-claim by the hospital against Dr. Taylor be reinstated as well.

Although the present case is the counterface of *Aherron*, that is, the release was of the employees and is contended to have effected a release of the employer, the decision is of critical and controlling significance because of the basis employed in the decision. *Aherron* expressly disclaims any need to determine whether, under Missouri law, a release of the master also acts as a release of the servant.[2] Instead, the *Aherron* decision is based entirely on the effect of § 537.060, RSMo 1986, which, it is held, operates to preclude the unintended release of persons liable in tort. In the language of *Aherron*, "An employee and a vicariously liable employer are 'persons liable in tort for the same injury or wrongful death,' and therefore subject to the statutory provisions controlling partial settlement and release." *Aherron*, 713 S.W.2d at 501.

If, as *Aherron* announces, it is unnecessary to determine the effect of the general law upon the circumstance of a partial release given the employer because it is the statute which determines the result, it must similarly be inappropriate to apply the McGinnis Doctrine when the partial release is of the employee. In either situation, the partial release of the employer or the partial release of the employee, the basis for decision in *Aherron* holds that the statute serves to preserve claims in cases

---

**2.** *Aherron* was first written as a decision by the eastern district of this court, No. 48817, decided August 6, 1985. That opinion and the Missouri Supreme Court decision are discussed in Note, *Equitable Release Procedure in Employer–Employee Tort Situations*, 51 Mo.L.Rev. 865 (1986). The eastern district reversed the trial court, as did the supreme court, but on the ground that Missouri should adopt the minority, but better reasoned view, that release of the master does not release the servant. That question was one of first impression in Missouri despite dicta in *Max v. Spaeth*, 349 S.W.2d 1, 3 (Mo.1961), indicating that the servant is released in that situation. The court of appeals opinion and the basis for that decision are mentioned only to demonstrate that the question of the general law applicable to vicarious liabilities was expressly discounted by the supreme court as dispositive in the case. The court of appeals opinion necessarily lost precedential value once transfer was taken by the supreme court. *State v. Norman*, 380 S.W.2d 406, 407 (Mo. banc 1964).

of vicarious liability against tort-feasors not included in the partial release.

*Aherron* also suggests that this result conforms to the existing concept of liability between employee and employer in recognizing that the employee must ultimately be responsible for the full amount of the claim. In *Aherron*, this principle required that the hospital's cross-claim against Dr. Taylor be reinstated to the extent the hospital was entitled to indemnity as a result of its payment in settlement with the plaintiffs. In the reverse situation, where the suit proceeds against the non-settling and vicariously liable employer, the latter's right to indemnity survives the settlement reached by the employee whose responsibility is released only to the extent of his payment.

Based on the foregoing analysis and authorities, the trial court is found to have erred if it granted Park Lane's motion for summary judgment on the ground that the release of the medical practitioners operated to release the hospital.

## II.

In additional paragraphs of its motion for summary judgment, Park Lane contended that it had no liability for the negligent acts of the physicians and the nurse anesthetist who treated Manar because those persons were not agents or employees of the hospital. Park Lane asserted that Missouri does not accept the doctrine that a hospital may be liable for adverse effects to a patient suffered in consequence of improper treatment rendered by doctors authorized to practice in the hospital.[3]

It is of course apparent that this second ground advanced as a basis for summary judgment is factually in direct conflict with the first ground which contended that be-cause the doctors were the agents and the hospital was the principal, the release of the doctors operated to release the hospital as a matter of law. Park Lane does not explain how the medical practitioners may be hospital agents or employees for the purpose of utilizing the benefits of the partial settlement, but not be agents for the purpose of determining vicarious liability.

In her petition, Manar alleged that the doctors and the nurse anesthetist were agents of the hospital by reason of their positions on the hospital staff. She also alleged that the treatment she received was the product of the collective acts and the concurrent negligence of the hospital and the doctors. As yet, Manar has not adopted a single theory for submission of her case. As she argues in her brief, she may submit under the doctrine of hospital liability attributable to improper supervision of physicians permitted to practice in the hospital when not competent to do so or, as she describes them, "multiple theories of joint and several vicarious liability." In short, neither Manar nor Park Lane has taken a consistent position as to a single legal basis to decide the merits of the action.

Summary judgment is available only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 74.-04(c). The party granted summary judgment must show both entitlement to it affirmatively and that the other party would not be entitled to recover under any discernible circumstances. *Greening v. Klamen*, 719 S.W.2d 904, 906 (Mo.App.1986). Summary judgment is not appropriate if there

---

**3.** This contention is not in all circumstances correct. The concept of liability upon a hospital for permitting unqualified doctors to practice in the hospital was articulated in *Darling v. Charleston Community Memorial Hospital*, 33 Ill.2d 326, 211 N.E.2d 253 (1965), *cert. denied*, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966). The case was cited with approval in *Gridley v. Johnson*, 476 S.W.2d 475, 484 (Mo. 1972), where the court stated, "The fact the defendant doctors here were not employees of the defendant hospital does not necessarily mean the hospital cannot be held for adverse effects of treatment or surgery approved by the doctors." *See also Porter v. Sisters of St. Mary*, 756 F.2d 669 (8th Cir.1985), vis-a-vis a direct duty to supervise and the theory of ostensible agency. Manar's petition in this case is at least arguably within the former category described in *Gridley v. Johnson*.

is any theory within the scope of the pleadings or in the broad scope of probable evidence which, if believed by the trier of fact, would authorize a recovery. *Engman v. Southwestern Bell Telephone Co.*, 591 S.W.2d 78, 81 (Mo.App.1979). The drastic remedy of summary judgment should be granted only with great caution and if plaintiff may be able to make a case on any plausible theory, summary judgment is not appropriate. *Martinez v. Midland Bank & Trust Co.*, 652 S.W.2d 193, 199 (Mo.App. 1983).

■ It is an essential component of a cause ripe for summary judgment that the facts be settled and that the claimant advance or be committed to a legal theory which he contends entitles him to relief on the uncontested facts. As a decision on the merits, summary judgment has all the attributes of any other final disposition, including res judicata. The record must therefore show exactly what cause has been decided establishing, among other consequences, a bar to reprosecution of the same claim.

■ Park Lane made no case for summary judgment on the second ground set out in its motion because the cause was not placed at issue on a legal theory which Manar had adopted. On the state of the record discussed above, the trial court could not possibly have rendered a judgment on the merits because the legal theory underlying Manar's claim against the hospital could have been discerned only by speculation and conjecture. That circumstance has continued through this appeal and leaves this court in doubt as to what basis Manar intends to adopt as a theory of liability.

Park Lane complains that plaintiff has shifted ground and advocated different theories for recovery under her original petition and the first amended petition and has taken differing positions on appeal contrasted with arguments presented to the trial court. It is sufficient to say that a party is entitled to resist summary judgment if any plausible theory within the scope of the pleadings is advocated. Park Lane is not entitled to summary judgment because the record does not foreclose the possibility that Manar may be able to make a case for recovery against Park Lane on one of the theories advanced.

Reversal of the summary judgment requires that the case be remanded to the trial court and, in view of the length of time the case has been pending, some comment as to suggested procedure is deemed appropriate.

The contention by Park Lane, remaining after disposition of the issue associated with the partial settlement and release of the individual defendants, is merely that under the facts plaintiff has alleged, Park Lane owes no liability to Manar. To advance this argument, it is unnecessary for Park Lane to hypothesize a theory of liability, as it did in its motion for summary judgment. Indeed, the description of a possible legal theory under which Manar may recover is contrary to the sense of Park Lane's argument that there is no legal basis for Manar to submit her claim.

The appropriate vehicle to assert Park Lane's position is a motion to dismiss the petition for failure to state a claim on which relief may be granted. If Manar seeks to proceed, she must respond by proposing at least one theory on which she would be entitled to go to a jury for a verdict. Whether Manar may bring her cause within the theory of *Darling v. Charleston Community Memorial Hospital* and *Gridley v. Johnson* cited above, or some other theory, is a question for future resolution on which we express no view at this time. It is, however, essential to the further processing of the case that Manar settle upon a theory of liability and present the question of viability of her case to the trial court for decision. That burden is upon her once the case is challenged by a motion to dismiss, and not upon Park Lane.

In view of the disposition reached, we deem it inappropriate and unnecessary to discuss Park Lane's additional argument that Manar may not advance a theory of corporate negligence because barred by the statute of limitations. We do, however, commend to the parties for their consideration the case of *Koerper & Co. v. Unitel*

**316**

*International, Inc.,* 739 S.W.2d 705 (Mo. banc 1987), and the discussion of the doctrine of relation back.

The judgment is reversed and the case is remanded for further proceedings.

All concur.