**Richard G. LOWE, et al., Plaintiffs,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Defendant and Third–Party Plaintiff–Appellant,**

v.

**GATX CORPORATION, Dresser Industries, Inc., and Monsanto Company, Third–Party Defendants–Respondents.**

No. 69761.

Supreme Court of Missouri,
En Banc.

May 17, 1988.

Rehearing Denied June 14, 1988.

Stephen Schoenbeck, St. Louis, for appellant.

Kenneth R. Heineman, Bruce D. Ryder, Timothy Noelker, Ted L. Perryman, W. Munro Roberts, Jr., Laura B. Allen, William W. Evans, St. Louis, for respondents.

BLACKMAR, Judge.

We now answer a previously unanswered question precipitated by this Court's epo-

chal decision in *Missouri Pacific Railway Co. v. Whitehead & Kales*, 566 S.W.2d 466 (Mo. banc 1978), in which we abolished the long-established rule that a joint tort-feasor had no right to contribution from another joint tort-feasor, except when a joint judgment has been rendered. Prior to that decision a plaintiff had the unqualified right to sue one, some, or all persons who may have contributed to an injury. Those who were sued had no basis for complaint that others equally or more at fault were not sued. The case held that a defendant could institute third-party proceedings against possible joint tort-feasors whom the plaintiff had not chosen to sue. Later, in *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. banc 1982), we held that the action for contribution or indemnity could be prosecuted as a separate action and did not have to be brought by way of third-party proceedings in the initial action.

Left unanswered was the question whether a remaining defendant could proceed against a defendant or potential defendant who had settled with the plaintiff. The question was laid to rest for the future by amendment to Section 537.060, RSMo 1986, effective September 28, 1983, which permits alleged tort-feasors to buy their peace by good faith settlement with the claimant.[1] The railroad argues that its right to contribution or indemnity accrued when the other parties settled in March of 1982 and that the amended statute cannot properly be given retroactive application so as to cut off this right. The settling defendants contend that the railroad's right

to indemnification accrued, if at all, only after it settled with the plaintiffs, citing *State ex rel. General Electric v. Gaertner*, 666 S.W.2d 764 (Mo. banc 1984), and *Rowland v. Skaggs Drug Co.*, 666 S.W.2d 770 (Mo. banc 1984), which hold that the statute of limitations does not run against a party seeking indemnification until that party pays or becomes obligated to pay the claimant. It follows, they say, that the amended statute was in place at the time the railroad's asserted rights accrued, and that there is no attempt to apply it retroactively to bar previously vested rights. They also cite *Aherron v. St. John's Mercy Medical Center*, 713 S.W.2d 498 (Mo. banc 1986), holding that the amendment applies to a release executed after the effective date even though the injury occurred before that date. We do not need to resolve this dispute, because we conclude that the same result would obtain whether or not the amendment is applied.

This claim arose because of the derailment of and spillage from a single tank car in Sturgeon, Missouri, on January 10, 1979. The car was manufactured by third-party defendant GATX Corporation. It was brand new and on its initial run. The derailment was caused by the failure of a coupler yoke supplied by third-party defendant Dresser Industries, Inc. The car carried chemicals produced by third-party defendant Monsanto Company, allegedly containing a small quantity of an extremely dangerous substance commonly known as dioxin. The appellant Norfolk and Western Railway Company, the operator of the train, directed a group of its employees to

---

1. The statute now in force reads as follows:

    Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by

the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

assist an independent contractor in cleaning up the spill. These employees claimed damages caused by contact with the dangerous substances during the cleanup.

Suit was brought by 47 plaintiffs against Norfolk and Western, GATX, Dresser, and Monsanto in the Circuit Court of Madison County, Illinois, under the Federal Employers Liability Act, 45 U.S.C. 51 et seq. The plaintiffs charged that the railroad failed to warn plaintiffs of the danger, failed to provide them with a safe place to work and the necessary protective clothing, and failed to provide decontamination facilities. All defendants except the railroad settled the case on the courthouse steps on March 15, 1982, Monsanto for $3,500,000, Dresser for $2,175,000, and GATX for $1,325,000. The trial proceeded against the railroad with the jury returning verdicts in favor of the plaintiffs totalling $57,965,000. The railroad appealed the verdicts, and also appealed the trial court's order dismissing its cross-claims for contribution or indemnity from the other defendants.

The Appellate Court of Illinois, Fifth District, to the surprise of many and the consternation of some, reversed the judgments in favor of the plaintiffs, finding that Madison County, Illinois, was an inconvenient forum for the maintenance of these claims. It specifically held that the settlements had been reached in good faith and that they barred claims for contribution, but not for products liability, under applicable Illinois statutes. The opinion was handed down on April 19, 1984, and is reported as *Lowe v. Norfolk and Western Railway Company*, 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (1984).

The plaintiffs then filed suit in the Circuit Court of the City of St. Louis against the defendant railroad, which filed third-party claims against the three settling defendants. The trial court dismissed the third-party claims after a hearing, concluding that the plaintiffs had entered into good faith settlements with the third-party defendants and that the settlements were effective to discharge these defendants from all liability. The railroad then reached a settlement with the plaintiffs for a total of $15,700,000, expressly reserving its rights against the settling defendants. It now appeals the dismissal of the third-party claims. The court of appeals affirmed the dismissal but transferred the case to us because it perceived special importance. We likewise affirm.

The third-party claims are set out in eight counts, as follows:

| COUNT NO. | AGAINST | BASIS |
|---|---|---|
| I | GATX | Strict products liability |
| II | GATX | Negligence |
| III | Dresser | Strict products liability |
| IV | Dresser | Negligence |
| V | Monsanto | Negligence |
| VI | Monsanto | Strict products liability |
| VII | Monsanto | Strict liability for ultra-hazardous activity |
| VIII | Monsanto | Contractual indemnity based on bill of lading. |

■ The railroad argues that the trial court was in error in concluding that the settlements had been reached in good faith. The Illinois appellate court expressly rejected this contention. It could not be predicted, at the time the settlements were entered into, that the courts of the forum state would ultimately conclude that the case should have been brought someplace else. The settling defendants were confronted with a very substantial trial, and each of them paid a seven figure amount to dispose of the claim against it. The policy underlying the doctrine of collateral estoppel calls for its application here, as to an issue expressly presented to and decided by the Illinois courts.

But we do not have to rest our conclusion on collateral estoppel. The court below held a hearing at which the parties had the opportunity to present evidence, and concluded that the third-party defendants had settled in good faith. The railroad argued bad faith (1) because counsel for all defendants had previously agreed that there would be no settlement, (2) because pretrial discovery had focused on Monsanto, against whom there was a claim for

punitive damages, and (3) because the settlement figures were small in proportion to the size of the Illinois verdict. Judge Gallagher rejected these assertions. Nothing in the record supports a contention that the plaintiffs or the settling defendants had any consideration other than their own economic interests in agreeing to settle. No similar case had been tried. The seven-digit settlement figures hardly bespeak collusion. The railroad concedes that it made no attempt to settle before the Illinois trial. The finding of good faith is adequately supported by the evidence.

The railroad cites cases from California indicating that a settlement may not be in good faith if the settling defendants do not contribute a substantial portion of the damages claimed, or ultimately awarded.[2] We are not persuaded by these cases, which seem to espouse a view contrary to ours about the nature and purpose of settlement, which is to substitute present assurance for future uncertainty.

■ We conclude that the *Whitehead and Kales* decision did not change the prior law allowing a defendant to buy peace by a good faith settlement with the plaintiff. Such a settlement protects the settling defendant against claims of the other defendants as well as those of the plaintiff. This is consistent with *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979), in which we held that a defendant against whom a verdict had been rendered had no right to a reduction of the award, or to contribution, because a person insulated from liability by the workers compensation statutes might be guilty of negligence which contributed to the accident. Also in line is *Kendall v. Sears, Roebuck and Co.*, 634 S.W.2d 176 (Mo. banc 1982), holding that a defendant sued by an unemancipated minor had no right to contribution from the plaintiff's father, who was immune to suit by his son, or to mitigation of the judgment against him. By the same token a settling defendant is no longer liable to the plaintiff, and therefore not subject to a claim for contribution by a fellow tort-feasor.

Our prior decisions indicate the assumption of several Judges of this Court, over the years, that a settlement by one defendant would bar claims for contribution by other defendants. *See, State ex rel. Maryland Heights Concrete Contractors v. Ferriss*, 588 S.W.2d 489, 492 (Mo. banc 1979), (Donnelly, J., dissenting, joined by Rendlen, J.); *Kendall v. Sears, Roebuck and Co.*, 634 S.W.2d 176, 181 (Mo. banc 1982), (Bardgett, J., concurring, joined by Higgins, J.); *State ex rel. Tarrasch v. Crow*, 622 S.W.2d 928, 937 (Mo. banc 1981), (Rendlen, J., dissenting).[3] Although it has been suggested that the principal opinion in that case supports a contrary view, (*Kendall, supra,* Welliver, J., dissenting in part), the majority opinion did not rule the merits of the issue of settlement, but simply held that the trial court should not be prohibited from entertaining an inquiry into the rather unusual facts of the case before it. There is an excellent discussion of the problem in Milholland, *"The Sequel to Settlement by Covenant Not to Sue?"*, 38 Mo.Bar.J. 559 (1982), in which the author expresses the opinion that settlements effectively excluded actions for contribution.

The parties did not cite *Safeway Stores, Inc. v. City of Raytown, supra,* but it is suggested that the opinion governs the case now before us. That case did not deal with settlement but rather with the right of a defendant against whom a verdict has been rendered to make a claim for contribution in a separate action against a person the plaintiff did not choose to sue. The opinion did not purport to answer, and does not answer, the question here in issue.

Considerations of policy strongly support our conclusion. The policy of the law is to

---

**2.** *See* dissents in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates,* 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985).

**3.** *See also, Parks v. Union Carbide,* 602 S.W.2d 188, 202 (Mo. banc 1980) (Welliver, J. dissenting).

encourage settlements. A defendant settles to obtain peace and repose. If these are not available, there will be no settlement. Some defendants, after *Whitehead & Kales*, devised bizarre settlement agreements, by reason of which the plaintiff would agree to reimburse the settling defendant on account of any indemnity the settler might later be obliged to pay.[4] Such a solution is not satisfactory because some plaintiffs may conclude that it is better to stand trial than to leave their ultimate entitlement in limbo. Settlements are surely impeded if any one defendant may effectively prevent others from settling. *Whitehead and Kales* was decided in the pursuit of good legal objectives. There is no reason to construe it in a way which would defeat the consistent policy of the law. The advantages of promoting settlement outweigh the possible disadvantage to those who settle late, or who do not settle at all and stand trial.

The railroad argues that Counts I, III, VI and VII involve different considerations, in that they are strict liability claims. The Illinois appellate court held that claims of this kind were not barred by settlement under the Illinois contribution statutes. It limited the effect of this holding to further proceedings in the Illinois courts, and stated that it did not purport to establish a rule which applied to litigation elsewhere. We conclude that there should be no distinction between products liability claims and negligence claims insofar as the right to contribution or indemnity is concerned.[5] The same policy considerations are present.

The railroad also tries to revive the pre-*Whitehead and Kales* theory which distinguished between "active" and "passive" negligence, in holding that there was no contribution among joint tort-feasors, but that one whose negligence was derivative, or purely passive, could obtain indemnity from a party who was actively negligent.[6] *Whitehead and Kales* rejected this distinction, and held that all noncontractual indemnity should be governed by its holding. We conclude that the defendants should be protected by the releases, and should not lose that protection because their fault may be found to be greater, or more active, than that of the railroad. It is quite doubtful, furthermore, that the railroad could sufficiently demonstrate that its conduct was purely passive.[7] It contends that it was not at all at fault on account of the derailment of a brand new tank car and faced a claim only on account of the strict provisions of the Federal Employers Liability Act, which allows recovery for any negligence, however slight. The basis of the claim against the railroad has to do not so much with its having caused the derailment and spill as with its sending its employees into the area to clean up without taking sufficient precautions. The petition expressly charged it with negligence which took place after the derailment had taken place, and did not involve the other defendants in any respect. The petition clearly alleges active negligence.

Another claim is that the plaintiffs sought to impose a "vicarious liability" against the railroad. If so, the statute would not bar a claim for indemnification, and, presumably, the antecedent law would have the same effect. Vicarious liability is a liability based on a legal relationship, such as employer-employee, principal-agent, or partnership. An F.E.L.A. claim requires a showing of some negligence on the part of the carrier.

---

4. *See, e.g., State ex rel. Tarrasch v. Crow,* 622 S.W.2d 928 (Mo. banc 1981).

5. This holding is in line with *Sharp Brothers v. American Hoist and Derrick Co.,* 703 S.W.2d 901 (Mo. banc 1986), holding that products liability law is designed to protect injured persons, and has limited application among commercial parties who can define their rights and duties by contract.

6. *E.g., Kansas City Southern Railway Co. v. Payway Feed Mills, Inc.,* 338 S.W.2d 1, 7 (Mo.1960).

7. Even actions characterized as passive are often "careless and blameworthy." This is one of the primary reasons we have abolished the importance of the active/passive distinction. *See, Whitehead & Kales, supra,* 566 S.W.2d at 472.

The railroad argues, finally, that its Count VIII states a contractual claim against Monsanto, on account of bill of lading provisions about the shipment of hazardous cargo without advising the carrier. This is a matter of federal law. The persuasive authorities hold that the railroad may not make a claim for contractual indemnity when it has been guilty of negligence. *Union Pacific Railroad Company v. United States*, 292 F.2d 521, 154 Cl.Ct. 427 (1961). Unless the plaintiffs can show some negligence on the railroad's part there is no F.E.L.A. claim. It makes no difference that the standard of negligence under that act may be lower than under our common law. The railroad's rights on settlement rise no higher than the rights following an adverse verdict. The trial court was correct in dismissing Count VIII.

We believe that our holding is sound from a policy standpoint and in accord with the expectations of lawyers and litigants. A contrary holding would result in stirring some sleeping dogs, in the form of cases in which some parties settled prior to September 28, 1983 and which are still pending, or which have been tried or settled within the past five years. There would also be problems as to whether the defendants would be precluded from challenging the amount of the settlement,[8] or what burden the railroad would have of demonstrating the reasonableness of its settlement. The benefits of repose are manifold. The legal system is best served by affirmance.

The judgments of dismissal are affirmed.

BILLINGS, C.J., and RENDLEN and HIGGINS, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed and concurs in separate dissenting opinion of DONNELLY, J.

ROBERTSON, J., dissents in separate opinion filed.

DONNELLY, Judge, dissenting.

In *Missouri Pacific Railroad Co. v. Whitehead and Kales Co.*, 566 S.W.2d 466, 469 n. 4 (Mo. banc 1978), this Court said:

By the "principle of fairness" here we mean the promise which is derivative of economic and political freedom and personal physical mobility. That is, in exchange for the opportunity of some undertaking, we each promise all others that we will be liable for the damage which our own negligence in the undertaking has caused. This creates a shared fiduciary obligation for which the principle of fairness is a premise. J. Rawls, A Theory of Justice 348 (1971). This premise is the basis of our fault-based system of tort liability.

The opinion in *Whitehead and Kales* was a brave attempt to implant Rawls' principle of fairness in the law of Missouri. But it was not to be.

I respectfully dissent for the reasons stated in *Parks v. Union Carbide Corp.*, 602 S.W.2d 188, 207 (Mo. banc 1980) (Donnelly, J., dissenting).

WELLIVER, Judge, dissenting.

I respectfully dissent. I know of no way to make clearer or more concise the reasons for my dissent than to refile my proposed draft for a principal opinion which draft was rejected by the majority. It follows verbatim.

"This case involves the question of whether a settlement made by three third-party defendants with the original plaintiffs during the gap period between adoption of *Missouri Pacific R.R. v. Whitehead and Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), and amendment of the settlement statute, § 537.060, RSMo 1986, effective September 28, 1983, can preclude the remaining primary defendant from having the fault of all defendants compared and determined in a subsequent action. The Court of Appeals, Eastern District, held the

---

8. *Cf., Safeway Stores, Inc. v. City of Raytown, supra,* 633 S.W.2d at 732.

remaining defendant, Norfolk and Western Railway Company, was not entitled to a comparison of the fault of all defendants, but certified the cause to this court because of the general interest in the question. Rule 83.02. We reverse the trial court."

I

"We adopt the statement of facts set forth in the Court of Appeals opinion.

"The appeal is from a final order of the Circuit Court of the City of St. Louis dismissing Norfolk and Western Railway Company's (Norfolk) third-party claim for contribution and indemnification against respondents General American Transportation Company (GATX), Dresser Industries, Inc. (Dresser), and Monsanto Company (Monsanto). The facts leading up to this appeal can be briefly summarized. On January 10, 1979, at Sturgeon, Missouri, a tank car being transported by Norfolk left the rails and was punctured by its own running gear. The cargo contained a chemical substance, described as orthochlorophenol crude, that leaked from the tank car at the site of derailment. The tank car was removed from the accident site for cleaning and repair.

"Action was brought in Illinois by 47 individual plaintiffs, all employees of Norfolk, who worked at or about the spill site or the repair and clean-up site. They alleged various physical ailments from exposure to the chemical that leaked from the tanker. Plaintiffs originally brought their action against Norfolk, GATX (manufacturer of the tanker), Dresser (manufacturer of a portion of the running gear of the tanker), and Monsanto (manufacturer of the chemical). In March 1982, just prior to trial, plaintiffs entered into a covenant with GATX, Dresser, and Monsanto, releasing their claims against these three defendants in exchange for $7,000,000. The jury returned a verdict against Norfolk and awarded $57,965,000 in favor of all plaintiffs. Norfolk appealed the trial court's decision. The Illinois Appellate Court held that Madison County, Illinois, was an improper forum pursuant to the doctrine of *forum non conveniens* and the action was dismissed. *See Lowe v. Norfolk and Western Railway*, 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (1984).

"In 1984, plaintiffs refiled their claim against Norfolk in the Circuit Court of the City of St. Louis. In 1985, Norfolk filed third-party claims against GATX, Dresser, and Monsanto for contribution and indemnity. Norfolk's petition was dismissed by the trial court and this appeal followed. In 1986, the plaintiffs' claims were dismissed following an agreement to release Norfolk in exchange for a payment of $15,750,000.

II

"Norfolk contends that the trial court erred in dismissing its action for contribution or indemnification against the third-party defendants.

"In 1983, by House Bills 135 and 194, the legislature amended the Missouri contribution act, now § 537.060, RSMo 1986. Norfolk claims that § 537.060 cannot be applied retrospectively to bar its action against the three prior third-party defendants. The critical amended language reads as follows:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury, such agreement shall not discharge any of the other tortfeasors for the damage unless the terms of the agreement so provide; however, such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tortfeasor to whom it is given from all liability for contribution or non-contractual indemnification to any other tortfeasor.

§ 537.060, RSMo 1986.

"In general, statutes are not applied retrospectively. The Missouri Constitution,

Article 1, § 13, prohibits retrospective application of a statute unless there is clear legislative intent to give it retrospective operation either by express language or by implication, and the statute is procedural only and does not affect any substantive right of the parties. *Pipe Fabricators, Inc. v. Dir. of Rev.*, 654 S.W.2d 74, 77 (Mo. banc 1983); *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34 (Mo. banc 1982), *State ex rel. St. Louis–San Francisco Railway v. Buder*, 515 S.W.2d 409, 410 (Mo. banc 1974). Statutes which cannot be applied retrospectively are those which extinguish an existing, vested civil right, create a new obligation, impose a new duty, or attach a new disability in respect to a prior transaction. *Buder*, 515 S.W.2d at 410. *Clark v. Kansas City, St. Louis and Chicago R.R.*, 118 S.W. 40, 43 (Mo.1909).

"We note in passing that neither the court of appeals nor any brief filed herein made any reference to the case which we believe to be determinative of the issues herein. On June 8, 1982, this Court handed down *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. banc 1982). Suit was brought for apportionment of liability following judgment against Safeway in a wrongful death action. Safeway brought the suit against three co-defendants, City of Raytown, Fulton Industries, Inc. and Contractor's Supply Co., none of whom had been made defendants by the plaintiff and none of whom had been impleaded by Safeway as third-party defendants. Setting aside the dismissal of the three co-defendants, the Court stated:

> The *Whitehead & Kales* decision transcends § 537.060, RSMo 1978 in alleviation of the harsh effects of the common law no-contribution rule. The decision modified a rule created by the courts. *Accord, Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1978); *Hawkeye Security Ins. Co. v. Lowe Construction Co.*, 251 Iowa 27, 99 N.W.2d 421 (1959).
>
> The principle of fairness recognized in *Whitehead & Kales* and the logical relation between it and Rule 52.11 mandate recognition of a separate cause of action. The right to implead a defendant under Rule 52.11(a) (Federal Rule 14) presupposes that the third party plaintiff has a substantive right which could be asserted independently....

*Safeway*, 633 S.W.2d at 731 (footnote omitted).

"Nothing in § 537.060 indicates that it was to be applied to releases entered into before the effective date of the amendment and *Safeway* makes it abundantly clear that rights of contribution are substantive rights. In fact, *Aherron v. St. John's Mercy Hospital*, 713 S.W.2d 498, 502, (Mo. banc 1986), in discussing the statute and distinguishing itself from *Whitehead & Kales* (and *Safeway*) states: "[s]ince the statute in question facially contemplates its application to releases executed following enactment and since such an effect does not alter substantive rights, the statute is properly applicable in the present circumstances."

"*Whitehead & Kales* in our opinion, placed new concrete substantive rights of contribution of parties defendant when it stated:

> Concurrent or joint tort feasors not sued by plaintiff, however, may now be brought in by third party practice for a determination in due course of their relative part of the responsibility, if such is the case, for the overall injury and damage to the plaintiff. A jury in the same or separate trial at the discretion of the court, ... should be charged with the responsibility for determining a relative distribution of fault and liability for the damages flowing from a tort, which damages will be, along with a finding of negligence, the predicate to apportionment.[8]

*Whitehead & Kales*, 566 S.W.2d at 474.

"Footnote '8' to the above quotation adds "[w]hether or not a separate trial is required of the issues between the third party plaintiff and the third party defendant necessarily depends upon the particular case." *Id.* at 474 n. 8.

"Section 537.060, as amended in 1983 clearly intended to exempt and cut off all rights of contribution had by a co-defendant. While the covenants herein are fully binding between each defendant and the plaintiffs, they have no binding effect on the third-party plaintiff herein and its right to claim contribution from the third-party defendants.

"The 1983 amendment to § 537.060 dealt with substantive rights and had no retroactive application to the releases and covenants executed by plaintiff and the three third-party defendants.

### III

"In the interest of clarity we outline and set forth the following significant dates.

June 15, 1978—*Whitehead & Kales*

January 10, 1979—The Spill in question

March 15, 1982—Covenants of settlement executed

September 28, 1983—§ 537.060 passed by legislature, became effective

"We would point out that no question of plaintiffs' right to covenant with any defendant or defendants he chooses is involved in this appeal, the only question here involved being whether a covenanting or releasing plaintiff and a defendant can cut off rights of contribution of a co-defendant who is not a party to the covenant or release following *Whitehead & Kales* and before passage of the amendment to § 537.060. Pre–*Whitehead & Kales,* a general release released all tortfeasors. Pre-*Whitehead & Kales* a plaintiff simply covenanted not to sue certain specified parties defendant in consideration of payment of a specified sum of money which was required to be deducted from any general verdict which might follow. The first thing in the law granting a plaintiff and one or more co-defendants the right to cut off the remaining codefendants' right of contribution following *Whitehead and Kales* was and is § 537.060, as amended in 1983.

"In this background, it was generally accepted at the time relative or comparative fault of defendants created by *Whitehead & Kales* rendered any attempted settlement in multi-defendant cases to be extremely dangerous, if not in fact impossible to accomplish during the gap period between *Whitehead & Kales* and passage of the settlement statute by the legislature in 1983.

"*Safeway* points out that:

The language in *Whitehead & Kales* indicating that the right to apportionment can be exercised by way of cross claim or third party practice is in answer to the question there presented; whether the entire matter may be decided in one suit, by one jury. The case, however, does not limit the right to contribution to the procedural vehicles there mentioned. To the contrary, the decision necessarily recognized the existence of a substantive right to contribution before it determined that Rule 52.11 afforded an appropriate method of exercising it.

In *Whitehead & Kales* this Court held: "A principled right to indemnity should rest on relative responsibility and should be determined by the facts as applied to that issue."; that if a "third party defendant did certain acts or omissions and was thereby negligent and that the same directly contributed to cause the injuries and damage to the original plaintiff, then the jury should award the third party plaintiff such proportion of the total sum paid by it to plaintiff as corresponds to the degree of fault of the third party defendant. The two concurrent tortfeasors should be treated according to their respective fault or responsibility." *Id.* at 472. In recognizing that the "essential thing is the attempt to be fair as between persons subjected to a common legal liability," *this decision abrogated the former common law rule that "there is no right to indemnity or contribution between concurrent or joint tortfeasors in* pari delicto, *except as provided by statute." Id.* at 469, 472 (citations omitted). *Under Whitehead & Kales the principle of contribution based*

*on relative fault replaced the "primary-secondary" and "active-passive" indemnity distinctions because the latter yielded the illogical result of finding one of two concurrent tortfeasors totally liable although both were to some degree responsible for the injury caused. Id.* at 470–74. The present rule in Missouri is what it was prior to misapplication of the no-contribution rule. *Id.* at 469; *Note,* Contribution Between Persons Jointly Charged for Negligence—Merriweather v. Nixon, 12 Harv.L.Rev. 176 (1898). *The right to contribution is based upon the "principle of fairness" and was historically a remedy afforded in equity, although subsequently enforced at law under a variety of theories such as assumpsit and quasi contract to rectify unjust enrichment. Whitehead & Kales,* 566 S.W.2d at 469. *See generally,* Note, *supra,* 12 Harv.L. Rev. at 178; R. Leflar, Contribution and Indemnity Between Tortfeasors, 81 U.Pa. L.Rev. 130 (1932); 18 C.J.S., Contribution § 2, p. 3.

It is true that the decision in *Whitehead & Kales* recognized that the right to contribution "presupposes actionable negligence." *Id.* at 468. *This does not mean, however, as respondents suggest, that a joint judgment of liability against two defendants is a necessary prerequisite to an action for contribution.* The defendant against whom contribution is sought must be a tortfeasor, originally liable to the plaintiff-injured party. W. Prosser, Law of Torts, § 50, at 309 (4th ed. 1971). As explained in the Restatement of Torts, Second, § 896A(1) "When two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them." *It is joint liability and not joint judgment which is prerequisite to contribution. Whitehead & Kales,* 566 S.W.2d at 469. *See, Stephenson v. McClure,* 606 S.W.2d 208, 213 (Mo.App.

1980); *Martinez v. Lankster,* 595 S.W.2d 316 (Mo.App.1980).
*Safeway,* 633 S.W.2d at 729–30 (footnotes omitted) (emphasis added).

"In this case, the $7,000,000 stipulated in settlement by the third-party co-defendants together with the $15,750,000 stipulated in settlement by Norfolk, represents the total liability of all defendants. As we indicated in *Safeway,* "[i]t is joint liability and not joint judgment which is prerequisite to contribution." When the dismissals of the three third-party co-defendants have been vacated and set aside, all that remains to be done is to compare and apportion the relative fault of all of the defendants, crediting and setting off the sums already paid by each of the parties.

"Issues regarding liability for contractual indemnity being unnecessary for determination of this appeal, the same may be presented to the trial court on remand.

"The statute having no retroactive application to these causes of action, there is no issue of "good faith" to be determined.

"We would reiterate and join in these additional words from *Safeway:*
None of the foregoing is intended to indicate a preference for separate actions. The purpose of Rule 52.11 and Rule 14 [Federal Rule] is to avoid two actions which should be tried together to save time and cost of duplicative litigation, to reach the same result from the same or similar evidence, and to avoid any handicap to parties which results from a time difference between judgments. 3 Moore's Federal Practice § 14.04 (2d ed. 1952).
*Safeway,* 633 S.W.2d at 731.

"Judgment of the trial court dismissing the three third-party defendants is reversed and the cause remanded for further proceedings consistent with this opinion."

For the reasons stated in the foregoing rejected draft, I have no choice but to dissent against the slow painful dismemberment of the comparative fault created by *Whitehead and Kales* and *Gustafson v.*

*Benda,* 661 S.W.2d 11 (Mo. banc 1983),[1] and to attempt a last defense of the "principle of fairness" enunciated therein and referred to by Donnelly, J. in his separate dissenting opinion in which I also concur.

ROBERTSON, Judge, dissenting.

I respectfully dissent and concur in all but the final paragraph of the separate dissenting opinion of Welliver, J.

1. *See Lippard v. Houdaille,* 715 S.W.2d 491, 500      (Welliver, J. dissenting).