Shirley **HEWLETT**, Plaintiff–Respondent,

v.

Henry E. **LATTINVILLE**, M.D.,
Defendant–Appellant.

No. 68695.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 5, 1996.

Kim Roger Luther, Luther & Associates, St. Louis, for defendant–appellant.

Stephen H. Ringkamp, The Hullverson Law Firm, St. Louis, for plaintiff–respondent.

HOFF, Judge.

Defendant, Henry E. Lattinville, M.D., appeals from the trial court's denial of his Motion to Modify the Judgment in this wrongful death action. The issues in this appeal stem from alleged settlement agreements between plaintiff, Shirley Hewlett, and another defendant, Stanley Biel, M.D. We affirm.

On January 29, 1990, Mrs. Hewlett filed a petition for wrongful death against Dr. Lattinville, Dr. Biel, and DePaul Health Center. Mrs. Hewlett's petition alleged that as a result of their negligence her husband died following a right occipital craniectomy. Dr. Lattinville performed the craniectomy.

Dr. Biel's medical malpractice insurer, Medical Protective, provided him liability defense and indemnity coverage through his employer, PVM Medical Associates. During the trial and prior to submission to the jury, Medical Protective allegedly entered into a "high-low" settlement with Mrs. Hewlett. Pursuant to the settlement, Medical Protective agreed to pay Mrs. Hewlett $100,000 regardless of the jury verdict and in return, Dr. Biel's liability would be limited to no more than $500,000. Pursuant to the agreement, Dr. Biel could appeal the verdict, but would still be required to pay the $100,000 despite any decision by the appellate court. The agreement was never put into writing and the terms were not recited on the record.

The jury returned a verdict in Mrs. Hewlett's favor for $1,350,000. The jury found Dr. Lattinville was fifty percent at fault, Dr. Biel was forty-five percent at fault, and DePaul Heath Center was five percent at fault. The trial court entered judgment on the jury verdict finding Dr. Lattinville was liable for fifty percent of the judgment or $675,000 and jointly and severally liable with Dr. Biel and DePaul Health Center for the remaining portion of the verdict pursuant to § 538.230.2 RSMo 1994.[1] Dr. Biel was found primarily liable for forty-five percent of the judgment or $607,500 and jointly and severally liable with DePaul Health Center for its share. DePaul Health Center was severally liable for five percent of the judgment or $67,500.

On May 30, 1995, post-trial motions were heard including Dr. Lattinville's Motion to Modify the Judgment. Dr. Lattinville requested that because of Dr. Biel's settlement with Mrs. Hewlett, the judgment should be reduced by Dr. Biel's apportioned percentage of fault pursuant to § 538.230.3 RSMo 1994.[2] Mrs. Hewlett argued the settlement did not warrant a judgment reduction under the statute because: (1) the settlement was not with Dr. Biel, but with his employer, PVM Medical Associates and because the employer was not a party, it could not be part of the fault allocation or judgment reduction; (2) the settlement had been breached by Dr. Biel because the "low" portion of the settlement was not paid on the day of the verdict as agreed; (3) the settlement, in the alternative, was invalid because it lacked "mutual assent" since Medical Protective did not understand that the $100,000 was to be paid on the day of the verdict; and (4) it was intend-

---

1. Section 538.230.2 provides:

    The court shall determine the award of damages to each plaintiff in accordance with the findings, subject to any reduction under subsection 3 of this section and enter judgment against each party liable on the basis of the rules of joint and several liability. However, notwithstanding the provisions of this subsection, any defendant against whom an award of damages is made shall be jointly liable only with those defendants whose apportioned percentage of fault is equal to or less than such defendant.

2. Section 538.230.3 provides:

    Any release, covenant not to sue, or similar agreement entered into by a claimant and a person or entity against which a claim is asserted arising out of the alleged transaction which is the basis for plaintiff's cause of action, whether actually made a party to the action or not, discharges that person or entity from all liability for contribution or indemnity but it does not discharge other persons or entities liable upon such claim unless it so provides. However, the claim of the releasing person against other persons or entities is reduced by the amount of the released persons' or entities' share of the total obligation imposed by the court pursuant to a full apportionment of fault under this section as though there had been no release.

ed that in making the settlement, § 538.230 would not "inure to benefit other defendants" to reduce the judgment. Dr. Biel indicated he did not understand that the $100,000 was to be paid on the day of the verdict. The trial court took all motions under submission.

On June 5, 1995, Dr. Biel's attorney mailed Mrs. Hewlett a check from Medical Protective for $100,000 in order to satisfy the agreed upon "low" portion of the settlement. On June 9, 1995, Mrs. Hewlett rejected the check stating it was being returned because the settlement was breached or the settlement was invalid since there was no meeting of the minds.

The trial court denied all post-trial motions on July 6, 1995, including Dr. Lattinville's Motion to Modify the Judgment.[3] On July 18, 1995, Dr. Biel filed a timely Notice of Appeal. On July 19, 1995, Dr. Lattinville also filed a Notice of Appeal. Mrs. Hewlett and Dr. Biel subsequently reached a settlement agreement on September 8, 1995 and Mrs. Hewlett executed a Covenant Not to Enforce Judgment and Partial Satisfaction of Judgment with Dr. Biel. Dr. Biel then dismissed his appeal.

Dr. Lattinville subsequently paid Mrs. Hewlett $675,000. The dispute here arises out of Mrs. Hewlett's intention to collect from Dr. Lattinville an additional $107,500 plus interest for the difference between the $607,500 judgment against Dr. Biel and his settlement of $500,000.

On appeal, Dr. Lattinville contends the trial court erred in denying his Motion to Modify the Judgment because § 538.230.3 requires the judgment be reduced by Dr. Biel's allocation of fault as determined by the jury.

■ The trial court made no finding as to whether there was a pre-judgment settle-

ment; consequently, that issue is deemed found in accordance with the result reached. *Thompson v. St. John*, 915 S.W.2d 350, 358 (Mo.App.1996). The trial court's implicit denial of Dr. Lattinville's Motion to Modify the Judgment indicates it found no prejudgment settlement had been reached; accordingly, we find the trial court did not abuse its discretion in denying the motion.

■ We next address the post-judgment settlement. Because this settlement did not occur until more than two months following the trial court's hearing on Dr. Lattinville's Motion to Modify the Judgment, it was never presented to the trial court and cannot properly be considered in this appeal. *Preston v. Preston*, 823 S.W.2d 48, 50 n. 2 (Mo.App. 1991).

The decision of the trial court is affirmed.

CRAHAN, P.J., and GRIMM, J., concur.

---

**3.** The trial court's order of July 6, 1995 read as follows:

Motions of defendants Biel and Lattinville for Judgment in accordance with their motions for directed verdicts or in the alternative for new Trial are *OVERRULED*.

Motion of defendant Lattinville to modify Judgment according to allocation of fault and establishment of periodic payments of future damages.

We acknowledge that the order does not specifically state Dr. Lattinville's Motion to Modify the Judgment was denied, although the parties have implicitly acknowledged its denial in their briefs. Nonetheless, the Motion to Modify the Judgment was denied automatically by Rule 78.06 ninety days after it was filed. *Blackmon v. Hindrew*, 824 S.W.2d 85, 87 (Mo.App.1992).