Shirley HEWLETT, Plaintiff/Respondent,

v.

Henry E. LATTINVILLE, M.D.,
Defendant/Appellant.

No. 71614.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 3, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 29, 1997.

Application for Transfer Denied
June 16, 1998.

Kim Roger Luther, St. Louis, for defen-
dant/appellant.

Stephen H. Ringkamp, St. Louis, for plain-
tiff/respondent.

CHARLES B. BLACKMAR, Senior Judge.

The plaintiff recovered judgment for $1,350,000 against three health care providers for the wrongful death of her husband. The jury assessed the fault of Dr. Henry E. Lattinville at 50%, that of Dr. Stanley Biel at 45%, and that of DePaul Hospital at 5%. The hospital paid $67,500 in satisfaction of its share of the judgment pursuant to Sec. 538.230.2. RSMo 1994.[1] Lattinville and Biel filed post-trial motions asserting, among other grounds, that Biel had entered into a pre-judgment settlement with the plaintiff so as to bring into play Sec. 538.230.3. The trial court overruled the motions. Lattinville and Biel appealed.

While the case was pending in this court Biel entered into a settlement in which he paid $500,000 in return for a "covenant not to enforce judgment and release," fully discharging his liability. Lattinville paid $675,000 plus interest in partial satisfaction of the judgment against him, reserving his claim that by reason of Sec. 538.230.3 Biel's settlement operated to reduce the judgment by his 45% equitable share of $607,500, and that the balance of the judgment had been fully satisfied by Lattinville's and the hospital's payments. The plaintiff claims that she is entitled the balance of the $1,350,000 judgment, citing Sec. 537.060. Thus the present amount in dispute between the plaintiff and Lattinville is $107,500, plus interest.

On the first submission of the appeal the only issue submitted was Lattinville's claim that the judgment had been satisfied. This court affirmed the judgment of the trial court, finding that the trial court did not err in concluding that no pre-judgment settlement had been consummated with Biel. The court declined to consider the effect of Biel's post judgment settlement because the issue had not been submitted to the trial court. *Hewlett v. Lattinville*, 932 S.W.2d 910 (Mo. App.1996).

Lattinville then presented his claim to the circuit court, which concluded that "Section 538.230.3 does not apply to reduce Dr. Lattinville's liability in the judgment regardless of whether or when Plaintiff settled with Dr.

Biel." Dr. Lattinville appeals from the ensuing judgment.

Section 538.230 reads as follows:

1. In any action against a health care provider for personal injury or death on account of the rendering or failure to render health care services where fault is apportioned among the defendants and persons released pursuant to subsection 3 of this section, the court, unless otherwise agreed by all the parties, shall instruct the jury to apportion fault among such persons and parties, or the court, if there is no jury, shall make findings indicating the percentage of total fault of all the parties to each claim that is allocated to each party and person who has been released from liability under subsection 3 of this section.

2. The court shall determine the award of damages to each plaintiff in accordance with the findings, subject to any reduction under subsection 3 of this section, and enter judgment against each party liable under the rules of joint and several liability. However, notwithstanding the provisions of this subsection, any defendant against whom an award of damages is made shall be jointly liable only with those defendants whose apportioned percentage of fault is equal to or less than such defendant.

3. Any release, covenant not to sue, or similar agreement entered into by a claimant and a person or entity against which a claim is asserted arising out of the alleged transaction which is the basis for plaintiff's cause of action, whether actually made a party to the action or not, discharges that person or entity from all liability for contribution or indemnity but it does not discharge other persons or entities liable upon said claim unless it so provides. However, the claim of the releasing person against other persons or entities is reduced by the amount of the released persons' or entities' equitable share of the total obligation imposed by the court pursuant to a full apportionment of fault under a full apportionment of fault under this section as though there had been no release.

---

**1.** All statutory citations are to RSMo 1994 unless otherwise indicated.

This section, adopted in 1986, applies only to actions against health care providers. Settlements in other civil actions are governed by the provisions of Sec. 537.060, enacted, with some revisions, in the middle of the 19th century, most recently amended in 1983, and reading in pertinent part as follows:

> ... When a release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons labile in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however, such agreement shall reduce by the stipulated amount of the agreement, or in the amount of the consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor....

█ We dispose at the outset of the plaintiff's claim that Sec. 538.230 RS 1986 is unconstitutional under Article III, Section 23 of the Missouri constitution, providing that "No bill shall contain more than one subject, which shall be clearly expressed in its title." The title of SB 663 describes it as "An Act to repeal sections 383.105 and 383.110, relating to health care providers, and to enact in lieu thereof fourteen new sections relating to the same subject." Both the repealed section and the new section clearly relate to "health care providers." It is of no significance that the repealed sections related to different aspects of regulation of health care providers, or that the new sections deal with diverse matters. *Fust v. Attorney General,* 947 S.W.2d 424, 428 (Mo. banc 1997). The title gave notice to all concerned that the amended statute could affect health care providers. *Carmack v. Director, Missouri Department of Agriculture,* 945 S.W.2d 956 (Mo. banc 1997), is not in point. There the title "relating to economic development" was found to be too indefinite to extend to matters outside the area entrusted to the Department of Economic Development by statute. *Id.* at 961. The term "health care provider," by contrast, has an established and easily under-

stood meaning. We reject the claim of unconstitutionality.

In considering the merits it is helpful to reflect on the jurisprudential climate at the time Sec. 538.230 was enacted in 1986. Missouri followed the common law of joint and several liability. A tort plaintiff could sue any or all persons deemed to be joint tortfeasors. Those against whom judgment was rendered were liable jointly and severally. The plaintiff could enforce a judgment against any or all for the full amount, leaving it to defendants forced to pay to seek contribution from others. The plaintiff could settle with any or all possible claimants. Amounts received in settlement were credited on the judgment, but the settling defendant was fully discharged and others who were parties to a joint judgment had no recourse against either the plaintiff or other defendants for a disproportionate settlement. Section 537.060 recognized a concept of "good faith" in settlements, but it is difficult to see how a defendant could be accused of bad faith for making the cheapest settlement the plaintiff would agree to. See *Lowe v. Norfolk and Western Railway Co.,* 753 S.W.2d 891 (Mo. banc 1988.)

The common law of joint and several liability was substantially changed by judicial decision in *Missouri Pacific Railway Co. v. Whitehead & Kales,* 566 S.W.2d 466 (Mo. banc 1978), which provided for an apportionment of fault among defendants and allowed defendants to interplead other alleged tortfeasors, with the ultimate goal of proportionate sharing of liability, at least among solvent defendants. The modification, however, did not do away with the principle that all defendants found liable were jointly and severally liable for the full amount of the judgment. The enlarged right of contribution extended only to defendants. As *Lowe* teaches, furthermore any defendant was still entitled to buy his peace in a settlement without having to account to other defendants. See also *Callahan v. Cardinal Glennon Hospital,* 863 S.W.2d 852 (Mo. banc 1993), in which the claim against health care providers arose prior to the adoption of Sec. 538.230.

To make the picture complete the Supreme Court in 1983 decided *Gustafson v. Benda,*

661 S.W.2d 11 (Mo. banc 1983), abrogating the common law doctrine of contributory negligence in favor of a rule of comparative fault. This holding did not change the common law rule of joint and several liability and, in spite of the arguments of defendant's counsel, we do not deem it material to the decision of the present case. That case prescribed the terms of the Uniform Comparative Fault Act for guidance pending action of the legislature. The legislature has now acted as to health care providers and we look solely to the provisions of Sec. 538.230 in determining the extent to which the common law doctrines, as modified by subsequent Missouri statutes and decisions, have been further modified. Sec. 538.230 seems to have no close counterpart in other states and so the cases cited from other jurisdictions are not helpful.

■ Section 538.230 indeed changes the common law in important respects. A defendant whose percentage of fault is smaller than that of any other defendant is liable, at the most, only for a proportionate share as determined by the jury, and this is so even though defendants found to be more at fault are judgment proof. Thus Dr. Biel's liability was capped at 50% of the total judgment (45% as his own equitable share plus 5% of the hospital's share), and this exposure was reduced to 45% when the hospital paid its share in full. The cap would apply even though defendants found to be more at fault might be judgment proof, thus making a drastic change in the principle of joint and several liability. Defendant Lattinville could be required to pay the entire judgment to the plaintiff, less whatever the other defendants paid, leaving to him the collection of any contribution from defendants who did not pay their total equitable shares. The statute also effected changes in the law of settlement, at least as to prejudgment settlements. Under the new statute a defendant could still settle with the plaintiff before the judgment for whatever figure the plaintiff would agree to, thereby being fully absolved from claims for damages and contribution, but the plaintiff took a risk by settling for a figure which provided with hindsight to be too modest. Plaintiffs might not be able to collect the full amount of damages the jury might award,

even though some solvent parties remained. The offset for payments to settling defendants was measured not, as in the past, by the amount of the settlement, but rather the settling defendant's equitable share, based on the jury verdict.

■ We must decide whether Sec. 538.230 extends to post-judgment settlements. The case is one of first impression. We conclude that the defendant's position is well taken and that Sec. 538.230.3 applies to all settlements, before and after judgment in the trial court, and continuing at least until the judgment is no longer subject to reversal or vacation on appeal. By so holding we reject the plaintiff's claim that Sec. 537.060 remains in effect in health care cases so as to cover post-judgment settlements.

■ We turn first to the language of the statute. Nothing in the language of Sec. 538.230.3 confines its operation to prejudgment settlements. The plaintiff's counsel point to the absence from Sec. 538.230.3 of language relating to "covenant ... not to enforce a judgment." We do not consider the absence significant. Section 538.230.1 applies by its terms to "any release, covenant not to sue, or similar agreement," without distinguishing between pre-judgment and post-judgment settlements. The agreement before us is surely an agreement similar to releases and covenants not to sue in being effective to discharge the settling defendant's liability for any further payments or for contribution. (We ignore the circumstance that the document is entitled "covenant not to enforce judgment and release" and stand on the language of the statute referring to "similar agreement[s]"). A statute is not rendered ambiguous simply because the legislature did not track the language of another statute. The drafters well might have thought that the use of a general term was preferable, so as to cover other possible kinds of agreements for the disposition of litigation. To find that Sec. 538.230.3 does not extend to post-judgment settlements however named, we would have to add language by implication which is not present in the wording of the statute. We would also have to conclude that a statute which on its

face covers all aspects of settlement of damage suits against health care providers would leave a vestige of the superseded statute still in force against this special class of defendant.

The plaintiff asserts that the statute, construed as we read it, will discourage settlements. One of the reasons argued in favor of the *Lowe* decision was the possible chilling of settlements by a construction which limited the liability of remaining defendants, or left settling defendants still exposed. Section 538.230 was not primarily designed to promote settlement. It was rather concerned with equity among the several defendants, achieved by provisions which may sometimes inhibit settlements. The legislature made a policy choice in the interest of non-settling defendants. The plaintiff's argument is essentially directed at the wisdom of the statute, which is not for the courts to assess.

If there had been no settlement Lattinville would have had the right to pursue the remaining defendants for contribution whenever he was held to pay, without regard to the state of their insurance. This right was taken from him without his consent insofar as Biel was concerned. He would thereby be harmed as much by a post-judgment settlement as by a prejudgment settlement. To hold that the effect of post-judgment and prejudgment settlements are different would be contrary to the general purpose of Sec. 538.230.

There is no sound distinction in language or policy between a settlement before a jury has allocated fault and one which comes afterward. Settlement offers mutual benefits. The plaintiff recovers a sum of money which is not subject to the risks of appeal. The defendant's liability is liquidated and discharged, whatever the result of the appeal might be. The appeal might be sound or not. A judgment might or might not be fully collectable. Variations in the scenario, such as the circumstance that the settlement was for the full limits of Biel's liability insurance, or that Lattinville did not ultimately assert points on appeal relating to liability or to trial error, are not significant in establishing general principles.

The plaintiff's argument that this decision marks the end of joint and several liability in health care provider cases is hyperbolic. If she considered that Lattinville was fully collectable for the total judgment and that there was no danger of reversal she could have kept all defendants in the case, proceeding with collection efforts against Lattinville and leaving it to him to seek contribution from the others. The plaintiff was aware of Lattinville's assertions and was in a position to exercise an informed judgment. Section 538.230 gives defendants in the position of Lattinville an interest in settlements by possible contributors which cannot be fully divested by settlements with others.

The judgment is reversed and the case is remanded to the circuit court with directions to show the judgment fully satisfied on the record.

CRAHAN, C.J., and CRANE, J., concur.